RADTKE v EVERETT

Docket No. 92582. Argued January 12, 1993 (Calendar No. 4). Decided June 2, 1993.

Tamara J. Radtke brought an action in the Grand Traverse Circuit Court against Stuart B. Everett, D.V.M., individually, and Clarke-Everett Dog and Cat Hospital, P.C., alleging sexual harassment by creating a hostile work environment in violation of the Michigan Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq., constructive discharge on the basis of sex, and assault and battery. The court, William R. Brown, J., granted summary disposition for the defendants, finding that because the hostile environment claim was based upon a single incident of sexual harassment, as a matter of law, it did not rise to the level of severity and persistence to permit recovery, dismissed the constructive discharge count because it was dependent upon finding a hostile work environment, and found that the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131), barred the assault and battery claim because of the failure to allege an intent to harm. The Court of Appeals, NEFF, P.J., and MAHER and HOOD, JJ., reversed the civil rights claim, finding that under the reasonable woman standard a single incident could be sufficiently severe to support a finding of a hostile work environment, and concluded that, in this case, the totality of circumstances was sufficient to permit trial, reversed the dismissal of the constructive discharge claim, and reversed the assault and battery claim because the defendant was named individually as the perpetrator, making the WDCA inapplicable (Docket No. 121611). The defendants appeal.

In an opinion by Justice RILEY, joined by Chief Justice

REFERENCES

Am Jur 2d, Civil Rights §§ 154 et seq; Workers' Compensation §§ 75, 76, 79.

Workers' compensation law as precluding employee's suit against employer for third person's criminal attack. 49 ALR4th 926.

When is work environment intimidating, hostile, or offensive, so as to constitute sexual harassment in violation of Title VII of Civil Rights Act of 1964, as amended (42 USCS sec. 2000e et seq). 78 ALR Fed 252.

CAVANAGH, and Justices LEVIN, BRICKLEY, BOYLE, and MALLETT, the Supreme Court *held:*

An objective reasonableness standard must be used in determining whether a hostile work environment exists under the Civil Rights Act. A hostile work environment claim is actionable only when the work environment is so tainted that, in the totality of the circumstances, a reasonable person in the plaintiff's position would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment. Although a single incident of sexual harassment generally is insufficient to constitute a hostile work environment, it may be sufficient if severe harassment is perpetrated by an employer in a closely knit working environment. The Court of Appeals improperly reached the issue whether the exclusive remedy provision of the Workers' Disability Compensation Act bars an alternative claim of assault and battery when the claim does not allege that the defendant intended to harm the plaintiff.

1. The Michigan Civil Rights Act is aimed at the prejudices and biases borne against persons because of membership in certain classes, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases. An employer may not discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of sex. Under the act, sexual discrimination is defined broadly to include sexual harassment.

2. To establish a prima facie case of a hostile work environment, an employee must have belonged to a protected group, must have been subjected to communication or conduct on the basis of sex, and must have been subjected to unwelcome sexual conduct or communication that was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment, and the employer must be liable under a theory of respondeat superior. Whether a hostile work environment existed is to be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment.

3. The Civil Rights Act imposes liability whenever sexual harassment creates a hostile work environment, and a single incident may create such an environment. However, a plaintiff usually will be required to prove that the employer failed to

rectify a problem after adequate notice and that a continuous or periodic problem existed or a repetition of an episode was likely to occur.

4. In this case, the plaintiff alleged a prima facie case of a hostile work environment. She is a member of a protected class (persons discriminated against on the basis of sex), was subjected to harassment on the basis of sex, and was subjected to unwelcome sexual conduct that a reasonable person would have perceived created a hostile work environment. In addition, because the employer was the perpetrator, the single incident was sufficient to satisfy a theory of respondeat superior and to permit a jury to determine whether the conduct was sufficient to have created a hostile work environment.

5. Because the plaintiff did not appeal the trial court's application of the WDCA to her claim in the Court of Appeals, and because she never requested permission to amend her complaint in the trial court, the issue whether the exclusive remedy provision of the WDCA bars an alternative claim of assault and battery where the plaintiff fails to allege that the defendant intended to inflict an injury upon the plaintiff was not preserved for appeal.

Affirmed in part and reversed in part.

Justice GRIFFIN, dissenting in part, stated that the cause of action for discrimination because of sex contemplated under subsection 103(h)(iii) of the Civil Rights Act requires more than the brief single incident alleged in this case. For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. An isolated sexual advance, without more, does not satisfy the requirement. The employer status of the individual defendant or the closely knit working environment in this case did not make the particular conduct more severe or pervasive.

Although a separate claim of substantial interference with employment might have been asserted under subsection 103(h)(iii), because the plaintiff resigned rather than return to work, such a claim could be premised only on a theory of constructive discharge, an assertion severely undercut by the plaintiff's deposition testimony. The trial court correctly ruled that the acts attributed to the defendant did not rise to the level of severity and persistence that would permit recovery under the act.

189 Mich App 346; 471 NW2d 660 (1991) affirmed in part and reversed in part.

1. Civil Rights — Sexual Harassment — Hostile Work Environment — Reasonableness Standard — Single Incident.

An objective reasonableness standard must be used in determining whether a hostile work environment exists under the Civil Rights Act; a hostile work environment claim is actionable only when the work environment is so tainted, in the totality of the circumstances, that a reasonable person in the plaintiff's position would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment; although a single incident of sexual harassment generally is insufficient to constitute a hostile work environment, it may be sufficient if severe harassment is perpetrated by an employer in a closely knit working environment (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

2. Workers' Compensation — Assault and Battery — Exclusive Remedy — Failure to Allege Intent to Harm.

The exclusive remedy provision of the Workers' Disability Compensation Act bars an alternative claim of assault and battery when the claim does not allege that the defendant intended to harm the plaintiff (MCL 418.131; MSA 17.237[131]).

*Smith, Haughey, Rice & Roegge* (by *Mark D. Williams*) for the plaintiff.

*Dykema, Gossett* (by *Seth M. Lloyd* and *Nancy L. Niemela*) and *Cunningham, Davison, Beeby, Rogers & Alward* (by *William M. Davison*) for the defendants.

Amici Curiae:

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Robert L. Willis, Jr.*, and *Dianne Rubin*, Assistant Attorneys General, for Michigan Civil Rights Commission and Michigan Department of Civil Rights.

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, J. Walker Henry, Rachelle G. Silberberg*, and *Patricia Bordman*) for Michigan Manufacturers Association.

*Miller, Canfield, Paddock & Stone* (by *Diane M. Soubly* and *John H. Willems*) for American Society of Employers, Motor Vehicle Manufacturers Association, Greater Detroit Chamber of Commerce, and Michigan Chamber of Commerce.

*Chiamp & Associates, P.C.* (by *Charlene M. Snow*), for Women Lawyers Association of Michigan.

*Julie Kunce Field* and *Suellyn Scarnecchia* for University of Michigan Women and the Law Clinic and Women Lawyers Association of Michigan.

*Stark & Gordon* (by *Sheldon J. Stark*) for Michigan Trial Lawyers Association.

RILEY, J. At issue are the elements of a prima facie case of a hostile work environment under the Michigan Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* We hold that a hostile work environment claim is actionable when the work environment is so tainted that, in the totality of the circumstances, a reasonable person in the plaintiff's position would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment. Additionally, we hold that although a single incident of sexual harassment is generally insufficient to constitute a hostile work environment, a single incident may be sufficient if severe harassment is perpetrated by an employer in a closely knit working environment.[1] We also

---

[1] Plaintiff also alleged that she was constructively discharged by defendants' conduct. Because a finding of sexual harassment is a necessary predicate in the instant case to such a claim, we need not consider count II of her complaint at this time. Plaintiff must first establish the requisite statutory sexual harassment before a claim of additional aggravating circumstances is considered.

hold that the Court of Appeals improperly reached the issue whether the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131), bars an alternative claim of assault and battery when the claim does not allege that the defendant intended to harm the plaintiff.

Thus, we affirm the opinion of the Court of Appeals that plaintiff has alleged a prima facie case of a hostile work environment, albeit on different grounds, and we reverse the opinion of the Court of Appeals and reinstate the trial court's order granting summary disposition regarding the assault and battery claim.

I

Plaintiff's sexual harassment, constructive discharge, and assault and battery claims were summarily dismissed by the trial court pursuant to MCR 2.116(C)(8) and (10). The Court of Appeals reversed. Accordingly, we begin our analysis with an examination of the applicable standards for granting summary disposition.

A

MCR 2.116(C)(8) permits summary disposition when the "opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8), therefore, determines whether the opposing party's pleadings allege a prima facie case. *Marrocco v Randlett,* 431 Mich 700, 707; 433 NW2d 68 (1988). Hence, the court "does not act as a factfinder," but "accepts as true all well-pleaded facts." *Abel v Eli Lilly & Co,* 418 Mich 311, 324; 343 NW2d 164 (1984). Only if the allegations fail to state a legal claim will summary disposition

pursuant to MCR 2.116(C)(8) be valid. *Macenas v Village of Michiana,* 433 Mich 380, 387; 446 NW2d 102 (1989).

While MCR 2.116(C)(8) tests the legal sufficiency of the pleadings, MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Velmer v Baraga Area Schools,* 430 Mich 385, 389-390; 424 NW2d 770 (1988). MCR 2.116(C)(10) permits summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."[2] A court reviewing such a motion, therefore, must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party. *Stevens v McLouth Steel,* 433 Mich 365, 370; 446 NW2d 95 (1989).[3] Accordingly, this Court examines and recites the facts in the instant case in the light most favorable to plaintiff.

B

Plaintiff Tamara Radtke was employed as an unregistered veterinary technician for defendant Clarke-Everett Dog and Cat Hospital, P.C., beginning in January, 1984. The hospital is owned in equal shares by defendant Dr. Stuart Everett and

---

[2] In other words, the "court must be satisfied . . . that 'it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome.'" *Stevens v McLouth Steel,* 433 Mich 365, 370; 446 NW2d 95 (1989), quoting *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973).

[3] The alternative would require our abandonment of what has been called the "truth-testing process of cross-examination" and would encourage unwarranted invasion by judges of the jury's exclusive province. [*Durant v Stahlin,* 375 Mich 628, 651; 135 NW2d 392 (1965), quoting *United States v United Marketing Ass'n,* 291 F2d 851, 853-854 (CA 8, 1961).]

Dr. James Clarke.[4] As of May, 1988, her duties included supervising staff, assisting the doctors during surgery, scheduling, and performing minor janitorial tasks. She assisted each doctor nearly equally, and possessed a "good [working] relationship" with each. There were no incidents of sexual harassment before the date in issue.

As commonly occurred, on Sunday, May 29, 1988, plaintiff was working alone with defendant Everett to provide weekend emergency veterinarian services. In her deposition plaintiff stated that after a lengthy day of work, she suggested that they take a break. Everett agreed. Plaintiff proceeded to the hospital's lounge and poured them each a cup of coffee. She then relaxed on the couch, with her back leaning into its corner and her legs on the sofa.

After finishing a few phone calls, Everett joined her and proceeded to sit next to her. Plaintiff, believing that Everett's behavior was inappropriate, attempted to leave the couch "the minute he sat down." Everett, however, physically restrained her by firmly placing his arm around her neck and holding her down. Plaintiff, both frightened and surprised by Everett's behavior, described what followed during her deposition:

> I tried to pull my head up three times, and, on the third time, I realized he was not going to let me go. And then finally, when his arm relaxed, I sprung forward, and I told him, "You don't want to do this."

Although plaintiff forcefully escaped his grip, Everett began to flatter her. Plaintiff rebuffed his newest advances by stating, "You don't want to do

---

[4] Plaintiff named the hospital and Dr. Everett individually as defendants.

this. I don't want to do this. You're married. I'm
married." Everett responded by caressing
plaintiff's neck. Again she protested, but he sim-
ply ignored her pleas. Indeed, he then attempted
to kiss her by grabbing her neck and pushing his
face towards hers. Plaintiff successfully pushed his
face away, left the couch, and walked across the
room.[5] Plaintiff then stated that she wished to
smoke outside, and encouraged Everett to accom-
pany her in public, which he did. The working day
was finished without incident.

Plaintiff further stated when deposed that she
did not know or could not know whether defen-
dant was trying to hurt her, but she stated that he
"would have or could have." She acknowledged
that he might have mistakenly believed she
wished to kiss him and that he did not condition
the terms or conditions of her employment upon
the acceptance of his advances.

That evening plaintiff discussed the incident
with her husband, and she tendered her resigna-
tion, along with a list of requests,[6] to Everett's
office the next morning.[7] The following day, Dr.
Clarke and plaintiff cursorily discussed the inci-
dent. Plaintiff also began psychological counseling
that day. Although plaintiff suffered no physical
injuries, she alleges severe emotional pain stem-
ming from the incident.[8]

[5] She alleges she was physically restrained approximately one and
one-half minutes, while the total encounter on the couch lasted
approximately five minutes.

[6] Accompanying the letter of resignation were requests for payment
of earned vacation and sick time, unemployment compensation, and
the reduction of her hospital account to zero. Plaintiff owed the
hospital approximately $1,000. Defendants met each of her requests.

[7] Plaintiff was again scheduled to work alone with Everett the
following day because it was Memorial Day.

[8] Plaintiff alleges that she has difficulty sleeping, and is periodically
affected by "[m]ajor depression."

C

In December, 1988, plaintiff filed a four-count civil suit against Everett and the hospital in the Grand Traverse Circuit Court. Plaintiff alleged that she was (1) sexually harassed in violation of the Civil Rights Act, (2) constructively discharged on the basis of sex, (3) the victim of assault and battery,[9] and (4) denied access to her personnel files in violation of the Employee Right to Know Act, MCL 423.501 et seq.; MSA 17.62(1) et seq. The crux of plaintiff's case is that Everett's actions constituted sexual harassment because they created a hostile work environment thereby forcing her resignation.

The Employee Right to Know Act count was dismissed by stipulation. In August, 1989, the trial court granted summary disposition regarding the remaining counts pursuant to MCR 2.116(C)(8) and (10). After reviewing plaintiff's complaint and deposition, the court ruled that she had failed to state a violation of the Civil Rights Act because her hostile environment claim was based upon a single incident of sexual harassment, which, as a matter of law, did "not rise to the level of severity and persistence which would permit recovery . . . ."[10] Likewise, the court dismissed the constructive discharge count because it was dependent upon finding a hostile work environment.[11] The court also ruled that the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131), barred plaintiff's

[9] In her pretrial statement of March 9, 1989, plaintiff states count III as "intentional infliction of emotional distress." Moreover, when deposed, plaintiff acknowledged no physical injury.

[10] Radtke v Everett, Circuit Court for the County of Grand Traverse, Decision and Order on Defendant's Motion for Partial Summary Disposition, August 11, 1989, p 2.

[11] Id.

claim of assault and battery because she failed to allege that Everett intended to harm her.[12]

The Court of Appeals reversed on all counts. The Court, sua sponte, rejected its prior utilization of a reasonable person standard to determine whether a hostile work environment exists, and ruled:

> [A] female plaintiff states an actionable claim for sex discrimination caused by hostile-environment sexual harassment under the state Civil Rights Act where she alleges conduct of a sexual nature that a reasonable woman would consider to be sufficiently severe or pervasive to alter the conditions of employment by substantially interfering with her employment or by creating an intimidating, hostile, or offensive employment environment. [189 Mich App 346, 355; 471 NW2d 660 (1991).]

The Court then found that under the reasonable woman standard, a "single incident could be sufficiently severe under some circumstances to support a finding" of a hostile work environment. *Id.* at 356. The Court concluded that in the instant case, the totality of circumstances were sufficient to permit a trial regarding the issue of a hostile work environment. *Id.* at 356-357. Accordingly, the Court also reversed the trial court's dismissal of the constructive discharge claim. *Id.* at 357.

Furthermore, the Court reversed the dismissal of the assault and battery claim, holding that because it named Everett individually, plaintiff was not suing her employer but her perpetrator. *Id.* at 357-358. The Court reasoned, "[t]he WDCA therefore is inapplicable to this claim and does not operate to bar plaintiff's recovery." *Id.* at 358.

---

[12] *Id.* at 3.

Leave to appeal was granted by this Court.[13]

D

Defendants, joined by amici curiae, assert before this Court that (1) the reasonable person standard should be utilized to determine whether a hostile work environment existed, (2) a single incident is insufficient to establish a prima facie case of a hostile work environment, (3) constructive discharge did not occur, and (4) the WDCA bars the alternative counts of assault and battery. Plaintiff, and other amici curiae, urge the contrary. Two amici curiae urge the elimination of any reasonableness standard, and at least one urges the adoption of a "reasonable victim" standard.

II

The Civil Rights Act "is aimed at 'the prejudices and biases' borne against persons because of their membership in a certain class, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Miller v C A Muer Corp,* 420 Mich 355, 363; 362 NW2d 650 (1984) (citations omitted). Accordingly, the act declares that "[a]n employer shall not . . . discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ." MCL 37.2202(1)(a); MSA 3.548(202)(1)(a). See also MCL 37.2202(1)(c); MSA 3.548(202)(1)(c). Hence, the essence of a sex discrimination civil rights suit is that similarly situated people have been treated differently because of their sex. *C Thorrez Industries, Inc v Civil Rights Comm,* 88 Mich App 704, 708; 278 NW2d 725 (1979). In pursuit of equality

[13] 440 Mich 889 (1992).

in the workplace, the act broadly defines sexual discrimination to include sexual harassment:

> Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:
>
> (i) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (ii) Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting such individual's employment . . . .
>
> (iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive . . . environment. [MCL 37.2103(h); MSA 3.548(103)(h).][14]

Sexual harassment was targeted by the Civil Rights Act because it is both "pervasive" and "destructive, entailing unacceptable personal, organizational, and societal costs." House Legislative Second Analysis, HB 4407, August 15, 1980.[15]

Perhaps more important, sexual harassment is

[14] Although not at issue, we will leave for future resolution whether the statute provides for a claim regarding either the creation of a hostile work environment *or* a substantial interference with an individual's employment.

[15] The Legislative Analysis elaborates:

> Individuals who are sexually harassed suffer psychologically, physically, and economically. Organizations which allow such activities suffer reduced worker safety and efficiency, costly job turnover, and increased medical, psychological and sick leave costs. Society pays a price for sexual harassment, since this behavior results in the creation of a female job ghetto in which a large segment of the work force remains transient or abused in the job market. [*Id.*]

prohibited in the workplace because it violates
civil liberty:

> Sexual harassment should be explicitly defined
> and prohibited because it is a demeaning, degrad-
> ing, and coercive activity directed at persons on
> the basis of their sex, the continuation of which is
> often contingent on the harasser's economic con-
> trol over the person being harassed. It should be
> outlawed because it violates basic human rights of
> privacy, freedom, sexual integrity and personal
> security. [*Id.*]

At issue in the instant case is subsection
103(h)(iii), commonly referred to as a "hostile
work environment" action.[16] Title VII of the
United States Civil Rights Act possesses an
analogous action, recognized by the United States
Supreme Court in *Meritor Savings Bank, FSB v
Vinson,* 477 US 57, 65; 106 S Ct 2399; 91 L Ed
2d 49 (1986).[17] In fact, the language of the
Michigan Civil Rights Act strongly parallels
language adopted by the Equal Employment
Opportunity Commission, the agency vested
by Congress to enforce title VII, defining sex-
ual discrimination.[18] While this Court is not

[16] The conduct defined in subsections 103(h)(i) and (ii) is usually
referred to as quid pro quo sexual harassment. See, e.g., *McCalla v
Ellis,* 180 Mich App 372, 377; 446 NW2d 904 (1989). As noted, plaintiff
has not alleged that submission to Everett's advances was "made a
term or condition . . . to obtain employment," nor has she alleged
that he utilized such advances "as a factor in decisions affecting" her
employment.

[17] Title VII of the federal Civil Rights Act states that it is "an
unlawful employment practice for an employer . . . to discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's
. . . sex . . . ." 42 USC 2000e-2(a)(1).

[18] EEOC guidelines define sexual harassment as:

> Unwelcome sexual advances, requests for sexual favors, and
> other verbal or physical conduct of a sexual nature . . . when
> (1) submission to such conduct is made either explicitly or
> implicitly a term or condition of an individual's employment,

compelled to follow federal precedent or guidelines in interpreting Michigan law, this Court may, "as we have done in the past in discrimination cases, turn to federal precedent for guidance in reaching our decision." *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986).

An examination of the Michigan Civil Rights Act reveals that there are five necessary elements to establish a prima facie case of a hostile work environment:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment;[19] and

(2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment. [29 CFR 1604.11(a).]

These guidelines, although not controlling, have been extensively consulted by federal courts. See, e.g., *Vinson, supra* at 65, citing 29 CFR 1604.11(a).

[19] Federal law, on the other hand, prohibits "such conduct [which] has the purpose or effect of *unreasonably* interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 CFR 1604.11(a)(3) (emphasis added). Moreover, federal courts hold that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Vinson, supra* at 67 (citations omitted). Hence, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v Brady,* 924 F2d 872, 878 (CA 9, 1991).

(5) respondeat superior. MCL 37.2103(h), 37.2202(1)(a); MSA 3.548(103)(h), 3.548(202)(1)(a).[20]

## A

A prima facie case of sexual harassment under the Michigan Civil Rights Act begins by showing that the plaintiff "was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man." *Heath v Alma Plastics Co,* 121 Mich App 137, 141; 328 NW2d 598 (1982). Plaintiff meets the first element of the action because she is a member of a protected class—she is an employee who has been the object of unwelcomed sexual advances. In fact, all employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex.

## B

Plaintiff also meets the second element of the action because she alleges that she was subjected to harassment on the basis of sex. Defendants argue that the conduct at issue was not sexual in nature, but was rather an innocent romantic overture. Yet, plaintiff need only show that "but for the fact of her sex, she would not have been the object of harassment." *Henson v Dundee,* 682 F2d 897, 904 (CA 11, 1982).[21]

[20] As in most civil rights claims, the plaintiff retains the burden of persuasion at all times. See, e.g., *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 794; 369 NW2d 223 (1985) (regarding the Civil Rights Act race discrimination claim).

[21] See also *Hall v Gus Construction Co, Inc,* 842 F2d 1010, 1014 (CA 8, 1988) (utilizing a "but for" test, and noting that "the predicate acts

In the instant case, plaintiff alleges that Everett forcefully held her down, caressed, and attempted to kiss her. Furthermore, implicitly underlying plaintiff's deposition testimony is an allegation that Everett was seeking unwelcome intimate sexual conduct with plaintiff. The overtures at issue were certainly inferentially sexually motivated:[22] but for her womanhood, Everett would not have held plaintiff down and attempted to solicit romance, if not sex, from her. Plaintiff's allegations are sufficient to meet the minimum prima facie showing necessary to establish that the conduct in question was based on sex.[23]

C

Plaintiff also meets the third element of the action because she alleges that she was subjected to unwelcome sexual conduct or communication. Not unlike title VII, the gravamen of a Michigan Civil Rights Act sexual harassment claim is that the alleged sexual advances were unwelcome. *Vinson, supra* at 68. "The threshold for determining that conduct is unwelcome is 'that the employee did not solicit or incite it, and the employee regarded the conduct as undesirable or offensive.'" *Burns v McGregor Electronic Industries, Inc,* 955 F2d 559, 565 (CA 8, 1992), quoting *Hall v Gus Construction Co, Inc,* 842 F2d 1010, 1014 (CA 8,

underlying a sexual harassment claim need not be clearly sexual in nature").

[22] To accept Everett's allegation that his motivation was "romantic" would assuredly turn the question into a wholly subjective characterization: precisely the characterization Everett seeks to avoid.

[23] *Henson, supra* at 904 ("In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment"); *Barnes v Costle,* 183 US App DC 90, 96-97; 561 F2d 983 (1977).

1988). In the instant case, plaintiff alleges that Everett physically restrained her against her will, as well as attempted to force her to kiss him. Viewing the testimony in the light most favorable to plaintiff, she has provided sufficient evidence to meet the unwelcomeness element.

D

The crux of the instant case is whether the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with plaintiff's employment or created an intimidating, hostile, or offensive work environment. The essence of a hostile work environment action is that "one or more supervisors or co-workers create an atmosphere so infused with hostility toward members of one sex that they alter the conditions of employment for them." *Lipsett v Univ of Puerto Rico,* 864 F2d 881, 897 (CA 1, 1988). Hence, "a loss of a tangible job benefit is not necessary since the harassment itself affects the terms or conditions of employment." *King v Bd of Regents of Univ of Wisconsin System,* 898 F2d 533, 537 (CA 7, 1990). This is so because "[t]he employer can thus implicitly and effectively make the employee's endurance of sexual intimidation a 'condition' of her employment." *Bundy v Jackson,* 205 US App DC 444, 456; 641 F2d 934 (1981). At issue are the legal standards for determining the existence of a hostile work environment.

1

Amici curiae[24] maintain that whether a hostile work environment was created should be deter-

[24] Amici curiae, Michigan Civil Rights Commission, University of Michigan Women and the Law Clinic, and American Society of Employers, all separately argue that elimination of any reasonable-

mined solely by reference to a plaintiff's reactions. In other words, they contend that when a plaintiff perceives that conduct has substantially created an intimidating, hostile, or offensive work environment, the inquiry should end. Amici curiae submit that similar to other civil rights actions, whether a hostile environment action exists is not contingent on the reasonableness of the actor or victim. They also note that the Michigan Civil Rights Act does not explicitly mandate a reasonableness standard. Moreover, supporting amici curiae's contentions are some commentators who vigorously attack a reasonableness standard as a reinforcement of male domination in society.[25]

However, a close examination of the act does not support their contentions. Rather, we are persuaded that an objective reasonableness standard is mandated by the plain meaning of the statute. When interpreting the Michigan Civil Rights Act, this Court must "give effect to the plain meaning of the language used." *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984). The language at issue reveals that the inquiries in a hostile work environment action inherently involve an examination of the reasonableness of the alleged perpetrator's conduct: "hostile,"[26] "intimi-

ness standard is appropriate. Moreover, plaintiff embraced this contention at oral argument.

[25] See, e.g., Ehrenreich, *Pluralist myths and powerless men: The ideology of reasonableness in sexual harassment law,* 99 Yale L J 1177 (1990) (maintaining that pluralist doctrines undergirding American democracy are flawed and that any reasonableness inquiry merely reinforces such flaws); Blackwood, *The reasonable woman in sexual harassment law and the case for subjectivity,* 16 Vt L R 1005 (1992) (maintaining that the reasonableness standard should be replaced by a purely subjective standard because any reasonableness standard is male biased).

[26] *Webster's Third New International Dictionary Unabridged Edition* (1966) at 1094, defines "hostile" as "a: of or relating to an enemy . . . c: marked by antagonism or unfriendliness . . . e: . . . not hospitable . . . ." These definitions, especially the second, are objectively based.

dating,"[27] and "offensive"[28] are terms primarily determined by objective factors.

Furthermore, a reasonableness inquiry is necessary to fulfill the purpose of the act. As noted, the purpose of the act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace. The reasonableness inquiry (i.e., objectively examining the totality of the circumstances) in a hostile work environment action, is simply a method of objectively determining whether a hostile work environment existed. The alternative would be to accept all plaintiffs' subjective evaluations of conduct, thereby imposing upon employers liability for behavior that, for idiosyncratic reasons, is offensive to an employee. We believe that such a result is contrary both to the plain meaning of the statute, as well as the statute's overall purpose. Cf. *Brooms v Regal Tube Co*, 881 F2d 412, 423 (CA 7, 1989).[29] To hold the contrary would delimit the act and ensure a deluge of unwarranted litigation in contradiction of the act's purpose. Instead, the Michigan Civil Rights Act mandates that an objective standard be utilized, thereby formulating external standards of conduct to which all persons may conform.

---

[27] "Intimidate" is defined as "to make timid or fearful . . . Frighten . . . *esp:* to compel to action or inaction (as by threats) . . . ." *Webster's, supra* at 1184. Again, at least the second portion of the definition is objective.

[28] "Offensive" is defined, in pertinent part, as "insulting, affronting." *Webster's, supra* at 1566. "Insult," in turn, is objectively defined: "to treat with insolence, indignity, or contempt . . . affront." *Webster's, supra* at 1173.

[29] See also *Daley v LaCroix*, 384 Mich 4, 13; 179 NW2d 390 (1970) ("Generally, defendant's standard of conduct is measured by reactions to be expected of normal persons. Absent specific knowledge of plaintiff's unusual sensitivity, there should be no recovery for hypersensitive mental disturbance where a normal individual would not be affected under the circumstances").

Furthermore, our survey of other courts examining this statute and its federal analogy reveals the imposition of some reasonableness standard. See, e.g., *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309, 315-318; 385 NW2d 778 (1986); *Brooms, supra* at 419. Moreover, even those rejecting the reasonable person standard in lieu of a gender-conscious standard have maintained that an objective standard must be utilized to prevent hypersensitive plaintiffs from recovering. See, e.g., *Andrews v Philadelphia,* 895 F2d 1469, 1483 (CA 3, 1990). Hence, we are persuaded that amici curiae present no compelling reason to abandon persuasive precedent. This Court, therefore, holds that whether a hostile work environment exists should be determined by an objective reasonableness standard, not by the subjective perceptions of a plaintiff.

2

Plaintiff, however, also maintains that the reasonableness standard should be gender-conscious. Hence, plaintiff urges the application of a "reasonable woman" standard when the plaintiff is female or a "reasonable man" standard when the plaintiff is a male. The Court of Appeals agreed:

> [W]e believe that in a sexual harassment case involving a woman, the proper perspective to view the offensive conduct from is that of the "reasonable woman," not that of the "reasonable person." Thus, the severity or pervasiveness of the conduct should be viewed from the perspective of the victim, not that of a hypothetical employee irrespective of gender. *Ellison v Brady,* 924 F2d 872, 878-879 (CA 9, 1991); *King v Bd of Regents of University of Wisconsin System,* 898 F2d 533, 537 (CA 7, 1990). We believe that a standard which views harassing conduct from the "reasonable person" perspective has the tendency to be male-biased and

runs the risk of reinforcing the prevailing level of discrimination which the state Civil Rights Act and title VII were designed to eliminate. In such a case, harassers could continue to discriminate merely because such harassment was the norm at the workplace. [189 Mich App 353-354.][30]

Other courts concur. See, e.g., *Andrews, supra* at 1486; *Bell v Crackin Good Bakers, Inc,* 777 F2d 1497, 1503 (CA 11, 1985); *Smolsky v Consolidated Rail Corp,* 780 F Supp 283, 294 (ED Pa, 1991); *Robinson v Jacksonville Shipyards, Inc,* 760 F Supp 1486, 1524 (MD Fla, 1991); *T L v Toys "R" Us, Inc,* 255 NJ Super 616, 636-639; 605 A2d 1125 (1992). Moreover, some commentators vigorously criticize the reasonable person standard as both male-biased and a prop to support male domination of society.[31]

However, with all respect, we conclude that a gender-conscious standard must be rejected. As noted, the language and purpose of the Michigan Civil Rights Act require that an objective standard be utilized. At the time of the act's adoption, standards of conduct were only defined by the

[30] Accordingly, the Court emphasized that, "[b]y adopting a gender-conscious standard that views the harassment from the victim's perspective, it is important to analyze and understand the different perspectives of men and women." *Id.* at 355. The Court's analysis found that, "because of their historical vulnerability in the work force, women are more likely to regard a verbal or physical sexual encounter as a coercive and degrading reminder that the woman involved is viewed more as an object of sexual desire than as a credible co-worker deserving of respect." *Id.* Similarly, plaintiff and amici curiae contend that men and women inherently define, interpret, and react to sexual harassment differently. Hence, "a gender-conscious examination of sexual harassment enables women to participate in the workplace on an equal footing with men." *Ellison, supra* at 879.

[31] See, e.g., Abrams, *Gender discrimination and the transformation of workplace norms,* 42 Vand L R 1183, 1206 (1989) ("If judges continue to strive for the ostensibly objective perspective . . . they will succeed primarily in entrenching the male-centered views of harassment that prevail in many workplaces"); Ehrenreich, n 25 *supra* at 1213.

reasonable person.[32] Indeed, Anglo-American juris-
prudence had utilized the reasonable person stan-
dard and its predecessor, the reasonable man stan-
dard, for well over a century before the adoption
of the act. Prosser & Keeton, Torts (5th ed), § 32,
pp 173-175. If the Legislature intended a departure
from that standard, it certainly would have explic-
itly mandated that alteration. Accordingly, this
Court must find that the Legislature intended that
the reasonable person standard be applied.

Moreover, the reasonable person standard
should be utilized because it is sufficiently flexible
to incorporate gender differences. As described by
Dean Prosser, the reasonable person standard has
been carefully crafted to formulate one standard of
conduct for society:

> The standard of conduct which the community
> demands must be an external and objective one,
> rather than the individual judgment, good or bad,
> of the particular actor; and it must be, so far as
> possible, the same for all persons, since the law
> can have no favorites.
>
> *     *     *
>
> The courts have gone to unusual pains to em-
> phasize the abstract and hypothetical character of
> this mythical person. He is not to be identified
> with any ordinary individual, who might occasion-
> ally do unreasonable things; he is a prudent and
> careful person, who is always up to standard. . . .
> [H]e is rather a personification of a community
> ideal of reasonable behavior, determined by the
> jury's social judgment. [*Id.* at 173-175.]

The "chief advantage of this standard" is that it
enables triers of fact "to look to a community
standard rather than an individual one, and at the

[32] The act was originally adopted in 1976, while the bar prohibiting
sexual harassment was added to the statute in 1980.

same time to express their judgment of what that standard is in terms of the conduct of a human being." 2 Restatement Torts, 2d, § 283, comment c, p 13.

Furthermore, the reasonable person standard examines the totality of the circumstances to ensure a fair result. *Highlander v K F C Nat'l Management Co,* 805 F2d 644, 650 (CA 6, 1986); *Babcock v Frank,* 783 F Supp 800, 808 (SD NY, 1992). Hence, the reasonable person standard is sufficiently flexible to incorporate gender as one factor,[33] without destroying the vital stability provided by uniform standards of conduct.[34]

The gender-conscious standard as formulated by plaintiff and the Court of Appeals, on the other

---

[33] Under the reasonable person standard, gender is a factor to be considered. Prosser and Keeton recognize that even though the reasonable person is ordinarily considered objective, nevertheless, it includes in the appropriate situation, a subjective element of the actor:

> The conduct of the reasonable person will vary with the situation with which he is confronted. The jury must therefore be instructed to take the circumstances into account; negligence is a failure to do what the reasonable person would do "under the same or similar circumstances." Under the latitude of this phrase, the courts have made allowance not only for external facts, *but sometimes for certain characteristics of the actor himself,* and have applied, in some respects, a more or less subjective standard. Depending on the context, therefore, the reasonable person standard may, in fact, combine in varying measure both objective and subjective ingredients. [Prosser & Keeton, *supra* at 175. Emphasis added.]

[34] The standard provides sufficient flexibility, and leeway, to permit due allowance to be made for such differences between individuals as the law permits to be taken into account, and for all of the particular circumstances of the case which may reasonably affect the conduct required, and at the same time affords a formula by which, so far as possible, a uniform standard may be maintained. [2 Restatement Torts, 2d, § 283, comment c, p 13.]

See also Seavey, *Negligence—Subjective or objective,* 41 Harv L R 1, 27 (1927); Prosser & Keeton, *supra* at 175.

hand, places undue emphasis on gender and the
particular plaintiff while it inappropriately de-
emphasizes society's need for uniform standards of
conduct.[35] Hence, a gender-conscious standard
eliminates community standards and replaces
them with standards formulated by a subset of the
community. An acceptance of a gender-conscious
standard and the logic undergirding it would in-
exorably lead to the fragmentation of legal stan-
dards to the detriment of society. After all, the
diversity that is Michigan—a multitude of ethnic
groups, national origins, religions, races, cultures,
as well as divergences in wealth and education—
would demand as many standards.[36] Yet one stan-
dard of conduct has always regulated this diverse
population, and to hold otherwise would weave
great discord and unnecessary confusion into the
law.

Furthermore, a gender-conscious standard is
clearly contrary to the gender-neutral principles
underpinning the Michigan Civil Rights Act. Al-
though well intended, a gender-conscious standard
could reintrench the very sexist attitudes it is

[35] Instead, "[w]omen's experiences should be encompassed under a
'reasonable person' and not merely a 'reasonable woman' standard.
Under an expanded notion of reasonable personhood, a victim's
gender would be but one factor a court considers." Dragel, *Hostile
environment sexual harassment: Should the ninth circuit's "reason-
able woman" standard be adopted?*, 11 J L & Com 237, 253 (1992).

[36] Indeed, some courts have already begun to fragment the reason-
able person standard. See, e.g., *Andrews, supra* at 1482 (utilizing
"minority employee" standard); *Harris v Int'l Paper Co*, 765 F Supp
1509, 1516, n 12 (D Me, 1991), vacated in part 765 F Supp 1529 (D Me,
1991) (utilizing the "reasonable person from the protected group of
which the alleged victim is a member" standard); *Stingley v Arizona*,
796 F Supp 424, 429 (D Ariz, 1992) (utilizing the " 'reasonable person
of the same gender and race or color standard' ") (citation omitted).
Moreover, some commentators specifically endorse this path. See, e.g.,
Abrams, n 31 *supra* at 1214 ("Courts also should consider the exploi-
tation of sensitivities arising from socialization as a woman of a
particular racial, ethnic, or socio-economic group"); Rhode, *Sexual
harassment*, 65 So Cal L R 1459, 1465, n 27 (1992) (urging use of the
"reasonable victim" standard).

attempting to counter. The belief that women are entitled to a separate legal standard merely reinforces, and perhaps originates from, the stereotypic notion that first justified subordinating women in the workplace. Courts utilizing the reasonable woman standard pour into the standard stereotypic assumptions of women which infer women are sensitive, fragile, and in need of a more protective standard. Such paternalism degrades women and is repugnant to the very ideals of equality that the act is intended to protect.[37] Indeed, we are persuaded by amicus curiae University of Michigan Women and Law Clinic, which opposes the reasonable woman standard as counterproductive:

> There are disadvantages to tailoring the standard solely to women. Being a member of a long-time disadvantaged group puts some women in a position where they need institutional support in achieving equality. However, that support, in and of itself, can cause others to stigmatize women as a weaker, less able group in need of protection. In effect, distinguishing women for special protection puts them back in the disadvantaged position which led to the need for special protection in the first place.[38]

---

[37] Furthermore, the "reasonable woman" standard may reinforce the notion that women are "different" from men and therefore need special treatment—a notion that has disenfranchised women in the workplace. Viewed from this perspective, a "reasonable woman" standard may create the perception that sexual harassment law allows special treatment for women. [Dragel, n 35 *supra* at 254. See also Kenealy, *Sexual harassment and the reasonable woman standard,* 8 Labor Lawyer 203-204 (1992).]

[38] Amicus curiae urges the adoption of a "reasonable victim" standard. It explains that the standard would focus upon the particular characteristics of the defendant, including, e.g., race, sex, and religion. This formulation not only fragments the reasonable person standard, but devolves the standard into an all but subjective analysis.

Hence, we reaffirm the application of the reasonable person standard. We hold that whether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment. MCL 37.2103(h); MSA 3.548(103)(h).[39]

3

Defendants also submit that the Court of Appeals erred in ruling that a single incident of sexual harassment may establish a hostile work environment cause of action. Defendants contend that only a pattern of sexual harassment can so poison the work environment as to constitute a hostile work environment. Supporting defendants' contention is the nearly universal consensus of federal authority holding that generally a single incident of sexual harassment will not create a hostile work environment. See, e.g., *Chamberlin v 101 Realty, Inc*, 915 F2d 777, 783 (CA 1, 1990); *Taylor v Jones*, 653 F2d 1193 (CA 8, 1981); *Babcock, supra* at 808.[40]

Nevertheless, the Michigan Civil Rights Act imposes liability *whenever* sexual harassment creates

---

[39] See also *Highlander, supra* at 650 (utilizing reasonable person in totality of circumstances test); *Babcock, supra* at 808 (same); *Vinson, supra* at 69, quoting 29 CFR 1604.11(b) (utilizing totality of circumstances test); *Lipsett, supra* at 898 (same); *Spencer v General Electric Co*, 697 F Supp 204, 218-219 (ED Va, 1988) (utilizing reasonable person standard); *Burns, supra* at 566 (same).

[40] On the other hand, federal courts have also recognized that a very severe single incident can be sufficient to constitute a violation of title VII. *King, supra* at 537; *Del Valle Fontanez v Aponte*, 660 F Supp 145, 149 (D PR, 1987); *Vermett v Hough*, 627 F Supp 587, 605-606 (WD Mich, 1986).

a hostile work environment. Although rare, single incidents *may* create a hostile environment—rape and violent sexual assault are two possible scenarios. One such extremely traumatic experience may, therefore, fulfill the statutory requirement.[41]

Because a single incident, unless extreme, will not create an offensive, hostile, or intimidating work environment, *Chamberlin, supra* at 783; *Highlander, supra* at 649-650, a plaintiff usually must prove that (1) the employer failed to rectify a problem after adequate notice, and (2) a continuous or periodic problem existed or a repetition of an episode was likely to occur.

In the instant case, however, because the perpetrator of the alleged conduct was the employer,[42] recourse to the employer was fruitless.[43] The alleged conduct, combined with the reality that the employer was the perpetrator, permits *this* single incident to be sufficient to reach the jury. Although the same conduct perpetrated by a co-worker might not constitute a hostile work environment, when an employer in a closely knit working environment physically restrains an employee and physically attempts to coerce sexual relations, the totality of the circumstances permits

---

[41] This standard, however, does not establish strict liability for sexual assault by a co-worker or supervisor, because an employer must be found vicariously liable via the doctrine of respondeat superior. A rape by a co-worker, then, might not constitute a hostile work environment because the "plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action." *Katz v Dole,* 709 F2d 251, 255 (CA 4, 1983). On the other hand, if a rapist was an employer, liability should almost certainly attach immediately.

[42] See *post,* pp 396-397.

[43] Defendants claim that plaintiff had the ability to obtain recourse from Dr. Clarke. Yet Dr. Clarke was powerless to alter the behavior of Everett because he was only an equal shareholder in the corporation. In such circumstances, if an incident of sexual harassment would otherwise create a prima facie case, we find that recourse to an equal co-owner will not defeat the claim.

a jury to determine whether defendant's conduct was sufficient to have created a hostile work environment.

**E**

The final element of a hostile work environment case—respondeat superior—is met by plaintiff because the alleged perpetrator was her employer. Under the Michigan Civil Rights Act, an employer may avoid liability "if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Downer v Detroit Receiving Hosp,* 191 Mich App 232, 234; 477 NW2d 146 (1991) (applying the standard to a Civil Rights Act claim).[44] See also *Babcock, supra* at 809. Such prompt and appropriate remedial action will permit an employer to avoid liability if the plaintiff accuses either a co-worker, *McCarthy v State Farm Ins Co,* 170 Mich App 451, 457; 428 NW2d 692 (1988),[45] or a supervisor of sexual harassment. *McCalla v Ellis,* 180 Mich App 372, 380; 446 NW2d 904 (1989), citing *Vinson, supra* at 72; *Downer, supra* at 234.[46] An employer,

---

[44] However, "[t]he employer has a duty to investigate and take prompt remedial action regarding claims of sexual harassment only if it has actual or constructive notice of the offensive environment." *Id.* at 235.

[45] See also *Barrett v Omaha Nat'l Bank,* 726 F2d 424, 427 (CA 8, 1984).

[46] This must be so because:

> Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no *quid pro quo* exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through *respondeat superior;* liability exists where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor. [*Steele v Offshore Shipbuilding, Inc,* 867 F2d 1311, 1316 (CA 11, 1989).]

of course, must have notice of alleged harassment
before being held liable for not implementing ac-
tion. *Katz v Dole,* 709 F2d 251, 255 (CA 4, 1983);
*Henson, supra* at 905. However, if an *employer* is
accused of sexual harassment, then the respondeat
superior inquiry is unnecessary because holding an
employer liable for personal actions is not unfair.

In the instant case, the record clearly reveals
that Everett, individually, as well as defendant
Clarke-Everett Dog and Cat Hospital, were em-
ployers of plaintiff. They possessed the ability to
hire and fire plaintiff and to control her working
conditions, maintained her discipline, paid her
wages, and owned the corporation that employed
her.[47]

Hence, we hold that plaintiff has alleged a
prima facie case of a hostile work environment
and affirm the ruling of the Court of Appeals,
albeit on different grounds.

III

Finally, the Court of Appeals held, sua sponte,
that because plaintiff's complaint brought the
assault and battery charge against Everett as an
individual, the WDCA exclusion provision is inappli-
cable. 189 Mich App 358-359. However, because
the plaintiff did not appeal the trial court's appli-
cation of the WDCA to her claim in the Court of
Appeals, and because the plaintiff never requested
permission to amend her complaint in the trial
court, this issue has not been preserved for appeal.
Thus, it should not have been reached by the
Court of Appeals, nor is it appropriately decided

---

[47] See, e.g., *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 653;
364 NW2d 670 (1984).

on appeal in this Court.[48] See, e.g., *Glass v Drie-borg*, 296 Mich 30, 33; 295 NW 547 (1941).

Hence, we reverse the decision of the Court of Appeals and reinstate the trial court's grant of summary disposition regarding the assault and battery claim.

IV

In summary, we hold:

- An objective reasonableness standard must be utilized to determine whether a hostile work environment exists under the Michigan Civil Rights Act.
- A hostile work environment claim is actionable only when, in the totality of the circumstances, the work environment is so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment.
- A gender-conscious standard is violative of the legislative intent of the act, undermines uniform standards of conduct, and is ultimately unnecessary.
- A single incident may be sufficient to constitute a hostile work environment if severe harassment is perpetrated by an employer in a closely knit working environment.
- The Court of Appeals improperly reached the issue whether the exclusive remedy provision of the WDCA bars an alternative

---

[48] Neither party has presented an in-depth argument regarding this extremely significant question.

claim of assault and battery when the claim fails to allege an injury that the defendant intended to inflict upon the plaintiff.

Thus, we affirm the ruling of the Court of Appeals that plaintiff has alleged a prima facie case of a hostile work environment, albeit on different grounds, and we reverse the opinion of the Court of Appeals and reinstate the trial court's order granting summary disposition regarding the assault and battery claim.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and MALLETT, JJ., concurred with RILEY, J.

GRIFFIN, J. (*dissenting in part*). Plaintiff's principal claim is grounded upon subsection (h)(iii) of § 103 of the Civil Rights Act, which includes within its definition of "[d]iscrimination because of sex" unwelcome sexual advances when "[s]uch conduct . . . has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive . . . environment." MCL 37.2103(h)(iii); MSA 3.548(103)(h)(iii). Because I believe the cause of action contemplated under subsection (h)(iii) requires more than a brief single incident of the kind alleged here, I respectfully dissent.

In considering the parameters of a "hostile environment" claim, the United States Supreme Court explained in *Meritor Savings Bank, FSB v Vinson,* 477 US 57, 67; 106 S Ct 2399; 91 L Ed 2d 49 (1986), that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of . . . employment and create an abusive working environment.'" Quoting *Henson v Dundee,* 682 F2d 897, 904 (CA 11, 1982). As the majority correctly states, *ante* at 394, the prevail-

ing view is that "an isolated sexual advance, without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrate an abusive workplace environment." *Chamberlin v 101 Realty, Inc,* 915 F2d 777, 783 (CA 1, 1990).[1]

This view was recognized by our Court of Appeals in *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309; 385 NW2d 778 (1986), wherein a plaintiff's co-worker made a verbal sexual advance and "then briefly placed his hand on her breast and 'grabbed' her buttocks." 149 Mich App 311. While acknowledging that the co-worker was properly terminated from his employment and "should have faced criminal responsibility for his actions," *id.* at 316, the Court explained that on the basis of its "reading of the federal cases, and especially the district court cases construing the severity and pervasiveness of conduct which must be established . . . , we conclude that the act does not allow . . . a remedy under these facts." *Id.*[2]

---

[1] In *Chamberlin,* the court failed to find that even *five* verbal sexual advances were sufficient to create a hostile environment. 915 F2d 783. See also *Babcock v Frank,* 783 F Supp 800, 808 (SD NY, 1992). The majority also notes that "federal courts have also recognized that a very severe single incident can be sufficient to constitute a violation of title VII." *Ante* at 394, n 40. However, in none of the cases cited in note 40 did the court actually find that a single incident was sufficient to create a hostile environment. See *King v Bd of Regents of Univ of Wisconsin System,* 898 F2d 533, 540 (CA 7, 1990) ("This is not the case of a single, innocent, sexual query. Instead, we have repeated, unwelcome advances, fondling, and a physical attack."); *Del Valle Fontanez v Aponte,* 660 F Supp 145, 149 (D PR, 1987) (an incident where the plaintiff's supervisor pressed his body against her and she felt his erect sexual organ "would not have been so sufficiently severe or pervasive to create an abusive working environment"); *Vermett v Hough,* 627 F Supp 587, 607 (WD Mich, 1986) ("only one of the alleged incidents of sexual harassment actually occurred . . . . I find, however, that under the cited definitions and standards, this was not an act of sexual harassment, nor was it an act based upon sex").

[2] As the majority correctly notes, *ante* at 381-382, federal case law, while not binding, is persuasive precedent in our consideration of civil

In this case, however, it appears that the majority has devised what amounts to a sliding scale of severity "because the perpetrator of the alleged conduct was the employer . . . ." *Ante* at 395. While I agree with the majority that defendant Everett's employer status satisfies the respondeat superior requirement,[3] I do not believe it follows that this relationship or the "closely knit working environment" makes the particular conduct in question more severe or pervasive.[4] *Id.* Moreover, even if it would have been fruitless to complain to the employer, as the majority asserts,[5] this consideration, in and of itself, does not increase the severity or pervasiveness of the conduct.

Following the episode alleged by plaintiff in this case, she finished her shift without further incident. However, she resigned the next morning and never returned to her job. Under these circumstances, plaintiff has no way of knowing what the work environment would have been like had she returned.[6]

Although the principal focus of plaintiff's com-

---

rights issues. *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986).

[3] See, e.g., *Vance v Southern Bell Telephone & Telegraph Co,* 863 F2d 1503, 1512 (CA 11, 1989): "[W]here the harasser is himself the plaintiff's employer, or an agent of the employer, the employer is directly, rather than indirectly liable for the harassment."

[4] While I recognize that this relationship may be relevant in determining whether the conduct "has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive . . . environment," MCL 37.2103(h)(iii); MSA 3.548(103)(h)(iii), I do not agree that this relationship automatically allows plaintiff a jury determination on this issue.

[5] Unlike the majority, I am not prepared to assume that resort to the employer would be fruitless in all such cases, however.

[6] While I agree with the court in *Carrero v New York City Housing Authority,* 890 F2d 569, 578 (CA 2, 1989), that "[a] female employee need not subject herself to an extended period of demeaning and degrading provocation before being entitled to seek the remedies provided" under the Civil Rights Act, I do not believe that a departure from the requirements outlined in *Vinson* is justified in this case. Such a departure creates a risk of "blurring beyond recognition any

plaint is on the claim of a hostile work environment, I do not discount the possibility that a separate claim under subsection (h)(iii) might have been asserted on the ground that defendant's conduct substantially interfered with plaintiff's employment.[7] If otherwise available, a single incident that is unusually severe could be the basis for a claim of substantial interference with an individual's employment.

However, because plaintiff chose to resign rather than return to work, any claim of substantial interference with her employment could only be premised upon a constructive discharge theory.[8] To prevail on such a theory, a plaintiff must establish either that the employer intended "to make things difficult for an employee, thus forcing him or her to resign," *LeGalley v Bronson Community Schools,* 127 Mich App 482, 487; 339 NW2d 223 (1983), or that it was reasonably foreseeable that the plaintiff would feel compelled to resign. *Held v Gulf Oil Co,* 684 F2d 427 (CA 6, 1981).

In this case, plaintiff does not allege that her employer intended to force her resignation. Although she alleges that a reasonable person in her position would have resigned, such an assertion is severely undercut by her own deposition testi-

meaningful distinction between hostile environment and *quid pro quo* discrimination." *Chamberlin, supra,* 915 F2d 783.

[7] Upon questioning by the Court at oral argument, counsel for both parties apparently conceded that the statutory language "substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive . . . environment" describes a hostile environment cause of action, rather than two separate theories of recovery.

[8] The majority concludes that a finding of sexual harassment is a "necessary predicate," *ante* at 372, n 1, to plaintiff's claim that she was constructively discharged. Because plaintiff quit her job and thus did not experience the hostile environment she says was created, I would view establishment of constructive discharge as a "necessary predicate" in this case to a claim of substantial interference with employment under subsection (h)(iii).

mony. She conceded that before this episode she had worked for the defendant for 4½ years with no prior incident of offensive conduct, that she had a good relationship with defendant, was happy in her work with defendant, was not concerned about being alone with him, and that it was possible that he mistakenly believed she wanted him to kiss her.[9] Under these circumstances, it was not reasonably foreseeable that she would resign when he did (unsuccessfully) attempt to kiss her.

In this case, the circuit judge found that the "acts attributed to Defendant Everett do not rise to the level of severity and persistence which would permit recovery under the act." Because I conclude that the circuit judge ruled correctly, I would reverse the decision of the Court of Appeals and reinstate the judgment of the trial court.

[9] Plaintiff also testified that before defendant attempted to kiss her, he caressed her back, told her "he really liked me," and said, " 'Oh, come on, you can't tell me you don't feel the same way about me.' " Plaintiff's reply indicated that she did feel the same way. However, she testified "out of fear, I lied . . . I told him what I thought he wanted to hear."