# Order

Michigan Supreme Court
Lansing, Michigan

March 18, 2011

140296

GREGORY J. BOWENS, PAULA M.
BRIDGES, and GARY A. BROWN,
           Plaintiffs-Appellees,
and

ROBERT B. DUNLAP and PHILLIP A.
TALBERT,
           Plaintiffs,

v

ARY, INC., d/b/a AFTERMATH
ENTERTAINMENT, PHILLIP J.
ATWELL, CHRONIC 2001 TOURING,
INC., GERONIMO FILM PRODUCTIONS,
INC., and ANDRE YOUNG,
           Defendants-Appellants,
and

AMAZON.COM, INC., AOL TIME WARNER,
INC., BARNES & NOBLE, INC., BARNES &
NOBLE.COM, INC., BEST BUY COMPANY,
INC., BLOCKBUSTER, INC., BORDERS GROUP,
INC., CDNOW, INC., JOHN DOE #1,
JOHN DOE #2, EAGLE ROCK
ENTERTAINMENT, EAGLE VISION, INC.,
HARMONY HOUSE RECORDS & TAPES,
HASTINGS ENTERTAINMENT, INC.,
HMV MEDIA GROUP, HONIGMAN MILLER
SCHWARTZ & COHN, L.L.P., HOUSE OF
BLUES CONCERTS/HEWITT/SILVA, L.L.C.,
INGRAM ENTERTAINMENT HOLDINGS,
INTERSCOPE RECORDS, INC., ERVIN
JOHNSON, MAGIC JOHNSON PRODUCTIONS,
L.L.C., METROPOLITAN ENTERTAINMENT
GROUP, INC., MGA, INC., MOVIE
GALLERY.COM, INC., MTS, INC/TOWER
RECORDS, THE MUSICLAND GROUP, INC.,
PANAVISION, INC., RADIO EVENTS GROUP,
INC., RED DISTRIBUTION, INC., PHIL
ROBINSON, WILLIAM SILVA, TRANS WORLD
ENTERTAINMENT CORPORATION, KIRDIS
TUCKER, WHEREHOUSE ENTERTAINMENT,
INC., and WH SMITH, P.L.C.,
           Defendants.
_____/

SC: 140296
COA: 282711
Wayne CC: 02-233251-CZ

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

On order of the Court, leave to appeal having been granted, and the briefs and oral arguments of the parties having been considered by the Court, we hereby REVERSE in

part the September 24, 2009 judgment of the Court of Appeals and we REINSTATE the December 4, 2007 summary disposition order of the Wayne Circuit Court.

After ten years of litigation—during which time this case has been summarily dismissed, reversed and remanded to the trial court for additional discovery, summarily dismissed for a second time, and reversed and remanded yet again—our review of this matter is limited to plaintiffs' one remaining claim. Specifically, plaintiffs allege that defendants violated Michigan's eavesdropping statute, MCL 750.539a *et seq.*, which prohibits "[a]ny person who is present or who is not present during a *private conversation* [from] willfully us[ing] any device to eavesdrop upon the conversation without the consent of all parties thereto . . . ." MCL 750.539c (emphasis added). "'[P]rivate conversation' means a conversation that a person reasonably expects to be free from casual or hostile intrusion or surveillance." *People v Stone*, 463 Mich 558, 563 (2001). After considering all the evidence of record in the light most favorable to plaintiffs, the non-moving party, *Quinto v Cross & Peters Co*, 451 Mich 358, 362 (1996), we conclude that no genuine issue of material fact exists to warrant a trial concerning whether the conversation at issue constituted a "private conversation."

As the Court of Appeals dissenting opinion correctly asserted, under the circumstances presented, "no reasonable juror could conclude that plaintiffs had a reasonable expectation of privacy in the recorded conversation" at issue. The following evidence compels this conclusion: (1) the general locale of the meeting was the backstage of the Joe Louis arena during the hectic hours preceding a high-profile concert, where over 400 people, including national and local media, had backstage passes; (2) the concert-promoter defendants were not receptive to the public-official plaintiffs' requests and, by all accounts, the parties' relationship was antagonistic; (3) the room in which plaintiffs chose to converse served as defendants' operational headquarters with security personnel connected to defendants controlling the open doors; (4) there were at least nine identified people in the room, plus unidentified others who were free to come and go from the room, and listen to the conversation, as they pleased; (5) plaintiffs were aware that there were multiple camera crews in the vicinity, including a crew from MTV and a crew specifically hired by defendants to record backstage matters of interest; (6) and video evidence shows one person visibly filming in the room where the conversation took place while plaintiffs were present, thereby establishing that at least one cameraman was openly and obviously filming during the course of what plaintiffs have characterized as a "private conversation." Given these facts, plaintiffs could not have reasonably expected that their conversation with defendants would "be free from casual or hostile intrusion or surveillance." *Stone*, 463 Mich at 563. To the contrary, the conversation strikes us as one that was uniquely defined by both "casual" and "hostile" "intrusion," and "surveillance." Accordingly, although a reasonable expectation of privacy is "generally" a question of fact, *id.* at 566, no such question reasonably exists in this case.

MARILYN KELLY, J. (*dissenting*).

I respectfully dissent from the Court's order reversing the judgment of the Court of Appeals and reinstating the trial court's order granting defendants' motion for summary disposition. I believe that material questions of fact exist regarding whether plaintiffs could have reasonably expected their conversation with defendants to be private. Accordingly, I would affirm the Court of Appeals.

This case involves application of the Michigan eavesdropping statute[1] to defendants' videotaping of a conversation between plaintiffs and defendants. During that conversation, plaintiffs demanded that a video, which they believed to be unsuitable for a young audience, not be played during an upcoming concert. The concert included performances by Dr. Dre, Snoop Dogg, and Eminem, among others. Defendants did not play the video during the concert. But they used portions of a videotape of the conversation with plaintiffs in a "bonus track" of a DVD of the concert tour, which drew a worldwide audience.

Plaintiffs filed suit alleging, among other things, invasion of privacy, fraud, and eavesdropping. The trial court granted summary disposition to defendants on all of plaintiffs' claims, ruling that plaintiffs did not have a reasonable expectation of privacy in the conversation. The Court of Appeals affirmed the dismissal of plaintiffs' claims with the exception of the eavesdropping claim. It concluded that there were outstanding issues of fact as to whether the conversation was secretly taped and whether plaintiffs had a reasonable expectation that the conversation would be private.[2] We denied defendants' interlocutory application for leave to appeal.[3]

On remand, the trial court again granted summary disposition to defendants. It concluded that plaintiffs did not have a reasonable expectation that the conversation would be private. The Court of Appeals reversed the trial court's decision on the eavesdropping claim, concluding that plaintiffs presented compelling issues of fact that only a jury may resolve.[4]

A majority of this Court holds that plaintiffs could not have reasonably expected that their conversation with defendants would be free from casual or hostile intrusion or surveillance. I disagree. MCL 750.539c prohibits "[a]ny person who is present or who is

---

[1] MCL 750.539a *et seq*.

[2] *Bowens v Aftermath Entertainment*, unpublished opinion per curiam of the Court of Appeals, issued April 19, 2005 (Docket No. 250984).

[3] *Bowens v Aftermath Entertainment*, 474 Mich 1111 (2006).

[4] *Bowens v ARY, Inc.*, unpublished opinion per curiam of the Court of Appeals, issued September 24, 2009 (Docket No. 282711).

not present during a private conversation [from] willfully us[ing] any device to eavesdrop upon the conversation without the consent of all parties thereto . . . ." A "private conversation" is one in which a person reasonably expects to be free from casual or hostile intrusion or surveillance.[5] Whether a conversation is private depends on the intent and reasonable expectation of the plaintiff.[6] And whether a person can reasonably expect privacy in a conversation generally will present a question of fact.[7]

Applying those principles to this case, I cannot conclude that the Court of Appeals clearly erred in holding that issues of fact exist concerning whether the conversation was "private" under the statute. Without question, some portions of a conversation between the parties were openly recorded. But a review of the recorded video footage submitted to the Court reveals that it is quite possible that the conversation at issue was secretly taped. Although defendants contend that the presence of the video camera should have been obvious, there is no footage of the filming itself. It is not clear whether the camera was visible when the contested filming occurred. Moreover, defendants' representatives explicitly acquiesced in plaintiffs' demand that the conversation be held in private. Hence, I believe that a material question of fact exists concerning whether plaintiffs reasonably expected the conversation at issue to be private. At the very least, it is not a question that this Court should definitively answer as a matter of law.

A majority of the Court finds that six facts compel the conclusion that no reasonable juror could conclude that plaintiffs had a reasonable expectation of privacy: (1) the meeting was held backstage at Joe Louis Arena during the hectic hours preceding a high-profile concert where over 400 people, including national and local media, had backstage passes, (2) the defendant concert-promoters were not receptive to the requests of plaintiffs, who were public-officials, and by all accounts, the relationship was antagonistic, (3) the room in which plaintiffs chose to converse was defendants' operational headquarters, and security personnel connected to defendants controlled the doors, (4) at least nine people in the room, plus others who were unidentified, were free

---

[5] *People v Stone*, 463 Mich 558, 563 (2001).

[6] *Dickerson v Raphael*, 461 Mich 851 (1999).

[7] *Stone*, 463 Mich at 566.

to listen to the conversation and come and go from the room, (5) plaintiffs were aware that there were multiple camera crews in the vicinity, including one from MTV and one specifically hired by defendants to record backstage matters of interest, and (6) video evidence shows one person visibly filming in the room where the conversation took place while plaintiffs were present.

Several of these facts have no relevance to whether plaintiffs had a reasonable expectation of privacy in their conversation with defendants. First, the location of the meeting and the fact that many people had backstage passes are irrelevant to whether plaintiffs reasonably expected the conversation to be private. Simply because many people were permitted entry to the room at one time or another does not render a conversation held there open to all of them. Second, the fact that plaintiffs and defendants had an antagonistic relationship is wholly immaterial to whether they engaged in a private conversation. Third, it does not follow as a matter of law that, merely because one party controlled access to the room where the parties conversed, a private conversation did not occur there. Fourth, the fact that camera crews were in the vicinity does not mean that plaintiffs could not reasonably expect a private conversation, especially since defendants explicitly agreed to a private conversation. Fifth, the presence of unidentified people in the room does not mean that the conversation at issue was not private. Rather, it simply establishes that people had access to the room who may or may not have been part of a private conversation.

I believe that the majority erroneously substitutes its judgment for that of the trier of fact. As we stated in *Stone*, "whether a person can reasonably expect privacy in a conversation generally will present a question of fact."[8] I would affirm the judgment of the Court of Appeals and hold that, viewing the evidence in a light most favorable to plaintiffs, there exists a material question of fact with regard to whether the parties' conversation was private.[9] Accordingly, I respectfully dissent.

---

[8] *Stone*, 463 Mich at 566.

[9] "A court reviewing a motion for summary disposition must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374 (1993).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 18, 2011

_____
Clerk

p0315