Isom HARRIS, Willie Minor, and Eddie Pugh, Plaintiffs,

v.

INTERNATIONAL PAPER CO., Defendant.

No. 89–0216–P.

United States District Court, D. Maine.

April 29, 1991.

---

Curtis Webber, Auburn, Me., for plaintiffs.

S. Mason Pratt, Pierce Atwood, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND AMENDED INJUNCTION AND ORDER ON MOTIONS TO AMEND AND CLARIFY INJUNCTION AND ORDER

GENE CARTER, Chief Judge.

The Court granted leave to Plaintiffs Isom Harris, Willie Minor, and Eddie Pugh, and Defendant International Paper to file proposed changes to the Court's Injunction and Order of March 28, 1991. *See* Opinion and Order at 47–48 (Docket No. 50). Both parties have moved to amend the Injunction and Order.[1] The Court will reject both of Plaintiffs' proposed amendments and two of Defendant's proposed amendments. The Court will vacate the Injunction and Order of March 28, 1991, 765 F.Supp. 1509, and issue an Amended Injunction and Order in response to seven proposed amendments contained in Defendant's motion to amend and clarify.[2]

### I. PROMOTIONS AND ADDITIONAL DAMAGES

Plaintiffs' motion repeats the demand made in the Complaint for an order requiring Defendant to promote Plaintiffs to the positions to which they would have been promoted but for Defendant's discrimination on the basis of Plaintiffs' race. But Plaintiffs merely repeat the arguments they advanced on this point in their Post-Trial Brief. The Court carefully considered, but eventually rejected, these arguments in the Opinion and Order, *see id.* at 40–43, and now reaffirms that decision. The jury's award of damages fully compensated Plaintiffs for the loss of their pro-

---

1. The Court also invited "any and all duly certified bargaining representatives of employees at Defendant's mill at Jay, Maine" to file *amici curiae* briefs commenting on the Injunction and Order. No unions accepted the Court's invitation.

2. The Court's final disposition of this case appeared in the Opinion and Order. Part IV of the Opinion and Order discussed the available remedies for Defendant's violation of the MHRA.

Plaintiffs' proposed amendments addressed only the discussion in Part IV. Part V is the Injunction and Order containing the remedies which the Court, in its discretion, determined were necessary in this case. The Injunction and Order was also served separately and directly on Defendant. Defendant's motion to amend and clarify addressed specific sections in the Injunction and Order.

motions. To grant Plaintiffs' demand would be to award duplicative relief inconsistent with the "make whole" nature of the relief contemplated by the Maine Human Rights Act (hereinafter MHRA) and Title VII.

Plaintiffs also seek additional damages [3] reflecting the higher rates of pay associated with the positions to which they should have been promoted by Defendant. Again, the Court considered and rejected these same arguments for damages in the Opinion and Order. *Id.* The jury's award was formulated based on specific instructions from the Court which resulted in Plaintiffs being fully compensated for the loss of their promotions for a reasonably foreseeable period into the future. The Court cannot and will not speculate on the bases or motivations for the jury's damage determinations, as Plaintiffs' proposed amendment would require, and thereby risk an award of duplicative relief.

The Court's decisions on Plaintiffs' demands for promotions and additional damages are a necessary consequence of Plaintiffs' counsel's strategic choices in structuring and pursuing this litigation. Counsel elected to submit Plaintiffs' breach of contract claims to a jury and to proceed on the contracts claims before the Court was able to decide the MHRA claims, but chose not to request precise special jury interrogatories on the damages issues. These elections invited preclusive jury verdicts. The Court offers no opinion on the propriety or effectiveness of the litigation strategy selected by counsel having no knowledge of the factors which may have motivated counsel to select this strategic course. Nonetheless, Plaintiffs must now accept the results produced by that strategy.

## II. PROPOSED AMENDMENTS TO INJUNCTION AND ORDER

Defendant proposes nine specific amendments addressing various parts of the Court's Injunction and Order. Seven proposed amendments have been addressed

with simple language changes in several sections of the Court's Amended Injunction and Order which is attached as an appendix hereto. These rephrasings do little more than bring greater clarity to the Amended Injunction and Order, and therefore do not require further detailed explanation. The Court's rationales for rejecting the two remaining proposed amendments require some elaboration.

### A.

Defendant expresses concern that the second paragraph of section (4) of the Amended Injunction and Order will require Defendant to breach the exclusive representation rights of the union certified to represent the production and maintenance workers at Defendant's mill by including nonunion advisors in the formalized system for investigating allegations and remedying harassment. The Amended Injunction and Order is not intended to, and does not, relieve Defendant of its obligations under federal and state labor law. Neither does the Amended Injunction and Order relieve the union of its duty of fair representation or any other statutory duty.

Paragraph two of section (4) of the Amended Injunction and Order is not inconsistent, on its face, with 29 U.S.C. section 159(a) which establishes the union's exclusive representation rights. Section 159(a) reads in full:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided, That any employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative,*

---

**3.** The jury awarded $55,000 in damages to each Plaintiff for their breach of contract claims. No

attack has been made on the damage awards.

*as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given the opportunity to be present at such adjustment.*

29 U.S.C. § 159(a) (emphasis added). The statute plainly does not include a blanket prohibition on the involvement of nonunion advisors in a procedure designed to eradicate racial harassment in the workplace. Even though conflicts may arise, the burden is on Defendant, hopefully with the cooperation of the involved union, to create and operate a system for investigating allegations and remedying harassment which is faithful both to the Amended Injunction and Order and Defendant's statutory obligations.

### B.

■ Defendant seeks a clarification as to the propriety of using the mandated training, education, and investigation systems to prevent and remedy sexual harassment in the workplace in addition to racial harassment. Sexual harassment is beyond the scope of this case, as Defendant itself pointed out in its Memorandum of Law in Support of Defendant's Motion to Amend and Clarify while discussing another element of the original Injunction and Order. Nothing in the Amended Injunction and Order prevents Defendant from fulfilling its legal and moral obligations to train and educate employees with respect to gender relations generally and in the workplace, and to undertake every necessary measure to eradicate sexual harassment from its workplace.

Further, Defendant does not need the Court's permission to comply with the law, and the Court expresses no opinion on the methods which Defendant may or may not choose to comply with the law. The Court warns Defendant, however, that it may not justify reduced clarity or effectiveness in its response to racial harassment and its compliance with the terms of the Amended Injunction and Order by pointing to its efforts, whatever they may be, to prevent and remedy sexual harassment.

Accordingly, the Court hereby *ORDERS* that Plaintiffs' motion to amend the Injunction and Order is *DENIED.* The Court further *ORDERS* that Defendant's motion to amend and clarify is *GRANTED IN PART* and *DENIED IN PART* as reflected in the Amended Injunction and Order contained in the Appendix to this Memorandum of Decision.

So ORDERED.

### AMENDED INJUNCTION AND ORDER

The Court hereby *VACATES* the Injunction and Order of March 28, 1991 as of the date of this Amended Injunction and Order. The Court hereby *ORDERS* that, effective April 29, 1991 at 10:00 AM, Defendant and all its servants, officers, directors, and employees *CEASE AND DESIST* from continuing or maintaining, or permitting to be continued or maintained, any policy, practice, custom, or activity which perpetuates, condones, permits, creates, or allows racial harassment in the workplace including, but not limited to, any and all offensive conduct and speech implicating considerations of race.

The Court further *ORDERS* that, effective April 29, 1991 at 10:00 a.m., Defendant initiate *immediately* the following programs:

(1) The immediate provision of adequate training and education to all employees, both supervisory and nonsupervisory, in questions of race relations generally and in the workplace, racial harassment, and employees' and employers' rights and responsibilities under state and federal antidiscrimination law. Specifically, all employees are to be informed in clear and easily understood language of their right to a work environment free of harassment inspired or motivated in any way by considerations of race. Further, all employees are to be informed that the conduct of co-workers, as well as that of supervisors, can be sufficient to create a work environment which violates state and federal antidiscrimination law. Such training and education shall

be provided on an ongoing and continuing basis pending further order of this Court and shall be repeated for all employees on a periodic basis of not less than once every six months.

(2) The immediate provision of adequate training and education to all supervisory employees (including but not limited to management personnel, superintendents, forepeople, and supervisors) and operators in the proper methods for investigating and remedying racial harassment in the workplace. Specifically, all supervisory employees and operators are to be informed orally and in writing of their obligation under the law to immediately and adequately remedy any racial harassment which exists in the workplace. This program shall include teaching supervisory employees and operators methods for examining the workplace and searching for evidence of racial tensions, such as racial graffiti. Such training and education shall be provided on an ongoing and continuing basis pending further order of this Court and shall be repeated for all supervisory employees and operators on a periodic basis of not less than once every three months.

(3) A regular system by which Defendant's senior supervisory and management personnel shall examine the workplace on a periodic basis of not less than once each month and search for any evidence of racial tensions in the workplace including, but not limited to, any racial graffiti.

(4) An effective and formalized system for prompt investigation of and appropriate action on all allegations of racial harassment, and the effective remedying of all racial harassment. This system must afford due process to the accused alleged perpetrator while guaranteeing redress, confidentiality consistent with due process and state and federal law, and protection to the victim. This system shall be publicized through the above-described training and education programs, separate printed materials to be distributed to all of Defendant's employees, and in the employee handbook (if any), in addition to being posted prominently throughout Defendant's facility.

This system shall permit victims an opportunity to choose confidential advisors who will participate in the complaint process and assist the victims in that process. Such confidential advisors may be attorneys, supervisors, co-workers, union representatives, or any other persons selected by the victims.

This system shall include an absolute and effective guarantee that no employee will suffer any disadvantage of any kind from Defendant or any of its agents, supervisors, or employees as a consequence of making an allegation of harassment or participating in this system in any way.

This system shall include the maintenance in individual files of all complaints, allegations, records, reports, evidence, interview notes, transcripts, and other materials created by Defendant and its agents and/or submitted to Defendant by a victim or his/her representative. Such files shall be maintained separately from Defendant's regular personnel files by a specified Equal Employment Opportunity Officer.[1]

(5) The publication of all regulations on racial harassment in the workplace promulgated by the Maine Human Rights Commission and the federal Equal Employment Opportunity Commission, along with adequate and easily understood explanations of employees' and employers' rights and responsibilities under state and federal anti-discrimination law. Such publication

---

**1.** The Court does not mean to imply that exhaustion of any internal grievance procedure will be a prerequisite hereafter to the vindication of victims' statutory rights in a judicial forum. Title VII, and the MHRA by implication, do not impose such an exhaustion requirement, even when an arbitration clause is included in a personal contract or collective bargaining agreement. *Utley v. Goldman Sachs & Co.,* 883 F.2d 184, 186–87 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 842, 107 L.Ed.2d 836 (1990).

shall occur in separate materials to be distributed to each employee and in the employee handbook (if any). These materials shall also be posted prominently throughout Defendant's facility.

(6) The immediate implementation of any and all other programs, practices, policies, and activities necessary to remedy the hostile racial environment which exists in Defendant's mill and to insure that Defendant's mill will be free of racial harassment in the future.

A failure by Defendant to implement *immediately* the above ordered programs, and all necessary and associated programs, practices, policies, and activities,[2] may subject Defendant to a finding of *civil contempt* and all penalties associated therewith upon proper motion by Plaintiffs. Upon a finding of any violation of this Order, Defendant will be liable for any and all attorney's fees and costs incurred by the moving party.

So ORDERED.

---

**2.** The Court now expressly states what should be apparent from this accompanying text. Adherence merely to the form of the requirements of this Order is not and will not be an adequate defense to allegations that Defendant has violated this Order. Defendant is obligated under this Order, simply and unequivocally, to undertake every appropriate measure necessary to eradicate racial harassment from its workplace. The specific programs mandated by this Order are minimum, but not necessarily sufficient, components of that task.