**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

JUL 2 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOHNNY G. MACK,

Plaintiff-Appellant,

v.

TOWN OF PINETOP LAKESIDE; et al.,

Defendants-Appellees.

No.    17-17105

D.C. No. 3:16-cv-08161-SRB

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted April 18, 2019
San Francisco, California

Before:  FERNANDEZ, BEA, and N.R. SMITH, Circuit Judges.

This case arises from the district court's grant of summary judgment to the

Town of Pinetop Lakeside (the "Town"), David Davis, Nadine Davis, Kenneth

Patterson, Savannah Patterson, Evelyn Racette, Tim Racette, Greg Smith, and

Cheryl Smith (collectively, "Defendants") for Plaintiff-Appellant Johnny Mack's

civil lawsuit alleging harassment and retaliation in violation of Title VII of the Civil

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Rights Act of 1964, 42 U.S.C. §§ 1981, 1983, and for intentional infliction of emotional distress ("IIED").  As the parties are familiar with the facts of this case, we do not restate them here.

We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.  We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Mack, as the nonmoving party.  *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1555 n.2 (9th Cir. 1994).

1.  Mack first argues that the district court erred in granting Patterson, Davis, and the Town summary judgment on his hostile work environment claim under 42 U.S.C. § 1981 and Title VII.  Because the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action," *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003), we address Mack's Title VII and § 1981 hostile work environment claims as though they are one and the same.

To preclude an adverse summary judgment on a hostile work environment claim, Mack must prove a genuine issue of material fact exists as to whether (1) he "was subjected to verbal or physical conduct of a racial nature," (2) "the conduct was unwelcome," and (3) the conduct "was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017) (ellipses and citation omitted).  As to Patterson's conduct, the parties dispute only the third

2

element regarding whether there is sufficient evidence from which a jury could reasonably conclude that Mack was subjected to an abusive work environment.

As a threshold issue, the district court properly considered only Patterson's four racial slurs (three uses of "nigger-rigging" and one use of "dirty Indian")[1] in its hostile work environment inquiry because Mack conceded that he "actually witnessed" only those slurs. Although there is evidence in the record that other Town employees heard Patterson use other racial slurs while he and Mack worked for the Town, there is no evidence that Mack learned of these incidents prior to Mack's and the employees' depositions. It follows logically that Mack must at least have some knowledge of the hostile conduct for it to alter his workplace and create an abusive work environment. Additionally, the district court properly excluded Davis's "snake incident" from its hostile work environment inquiry because there is evidence to suggest that Mack did not find Davis's actions to be racially motivated.[2]

But the district court erred in holding that Patterson's use of four racial slurs

---

[1] Mack is African-American; his wife is Native-American.

[2] When asked why he believed Davis put the snake in Mack's sweeper, Mack testified that Davis did it out of "[p]lain stupidity" or because "he was trying to kill [him]." But Mack never suggested that Davis committed the snake incident out of racial animus. Further, Mack conceded that he heard only four racial slurs, each made by Patterson. At his deposition and after testifying to the four racial slurs he witnessed, Mack was asked if there was any other conduct he "believe[d] was racially offensive?" to which Mack responded, "Not at this time." Thus, viewing the evidence in the light most favorable to Mack, he has failed to create a genuine issue of fact as to whether Davis's snake incident was "conduct of a racial nature." *See Reynaga*, 847 F.3d at 686.

3

made in Mack's presence throughout 2015-2016 was insufficient to establish a genuine issue of material fact as to whether Mack was subjected to an abusive work environment. Three of the four racial slurs Patterson used in Mack's presence contained a term that we have recognized as "highly offensive and demeaning," *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004), and "perhaps the most offensive and inflammatory racial slur in English," *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001). Because Patterson used such severely offensive language, in the presence of an African-American person three times within one year, along with one other racial slur, a reasonable jury could conclude that Mack's work environment was objectively and subjectively hostile. *See McGinest*, 360 F.3d at 1115–17. Further, it does not matter that Patterson's racial slurs were used in Mack's presence, rather than directed at him, because we have held that hostile conduct "need not be directly targeted at the plaintiff to be relevant to his . . . hostile work environment claim." *Reynaga*, 847 F.3d at 687. Thus, we reverse the district court's grant of summary judgment on Mack's hostile work environment claims (1) under Title VII against the Town;[3] and (2) under § 1981 against Patterson. But we affirm the district court's grant of summary judgment as

---

[3] Because the Town failed to raise the affirmative defense that it undertook "remedial measures reasonably calculated to end the harassment," *McGinest*, 360 F.3d at 1119–20 (internal quotation marks omitted), that defense is waived as to consideration of this appeal, *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994).

4

to (1) the § 1981 claim against Davis, because he did not engage in any racially motivated conduct; and (2) the § 1981 claim against the Town.[4]

2. Next, Mack argues that the district court erred in granting summary judgment to Defendants for his four varying retaliations claims under Title VII and 42 U.S.C. §§ 1981, 1983. Title VII, § 1981, and § 1983 each follow the same essential framework for retaliation claims: Mack must establish a genuine issue of material fact that "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (Title VII); *see also Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (§ 1983); *Manatt*, 339 F.3d at 800–01 (Title VII and § 1981).

Mack's retaliation claims fail for lack of an adverse employment action. "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity," which "in this context means it well might have dissuaded a reasonable worker from making or supporting

---

[4]     Town Manager Evelyn Racette is a "final decision maker," because she would have made the "final decisions on discrimination and retaliation" matters—including "whether . . . Patterson and Davis were to be disciplined." However, shortly after the snake incident, Racette gave Patterson a formal warning letter about his use of racial slurs. Thus, Racette did not "approve" the conduct by Patterson and his "basis for it"—"ratification" necessary for making their actions her own, "chargeable to the municipality because [her] decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted); *Ray*, 217 F.3d at 1243.

The snake incident committed by Mack's co-worker Davis is not an adverse employment action because it did not affect Mack's employment. Such an act would not reasonably deter employees from engaging in protected activity, such as complaining to a supervisor, because a supervisor could remedy the action taken by the co-worker. Indeed, viewing the facts in the light most favorable to Mack, it is clear Mack was not deterred from reporting his grievances because he subsequently complained to Councilperson Wessel about the snake incident. And Mack offers no evidence to suggest that Davis's snake incident was accompanied by a motive to deter Mack from reporting harassment to his supervisors. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) (holding that a personal threat made "with the specific purpose of chilling [the plaintiff's] speech" was "'reasonably likely to deter' employees from speaking about misconduct observed within the [company]" (citation omitted)).[5]

3. Finally, Mack argues that the district court erred in granting the Town summary judgment for his IIED claim. We agree. Under Arizona law, a claim for IIED requires a showing that (1) the defendant engaged in "extreme" and

---

[5] Mack abandoned his theory that the reprimands by Mayor Smith and Evie Racette constituted "adverse employment actions." He explicitly waived this theory in his briefing and did so again at oral argument.

6

"outrageous" conduct; (2) with intent to cause emotional distress or with reckless disregard for "the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of [the] defendant's conduct." *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005) (en banc) (citation omitted).

Here, reasonable minds could differ as to whether the snake incident amounts to extreme and outrageous conduct sufficient to support Mack's IIED claim. *See Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). Particularly, the fact that Davis knew Mack was extremely afraid of snakes and that his health was "not well" adds to the extreme and outrageous nature of his conduct, Restatement (Second) of Torts § 46 cmt. f (Am. Law. Inst. 1965), for which the Town may be vicariously liable, *Engler v. Gulf Interstate Engineering, Inc.*, 280 P.3d 599, 601 (Ariz. 2012) (en banc); *Arizona v. Shallock*, 941 P.2d 1275, 1281 (Ariz. 1997) (in banc). Additionally, because Davis knew of Mack's fear of snakes and his poor health, a genuine issue of material fact exists as to whether Davis acted with at least a reckless disregard for "the near certainty that [emotional] distress [would] result from his conduct." *Miller*, 115 P.3d at 110. Finally, Mack claims to have suffered a heart attack from the snake incident. Arizona courts recognize such an event can constitute severe emotional distress. *See, e.g.*, *Midas Muffler Shop v.*

7

*Ellison*, 650 P.2d 496, 501 (Ariz. Ct. App. 1982).[6] Therefore, we reverse and remand the district court's grant of summary judgment to the Town for Mack's IIED claim as to the snake incident.[7]

**AFFIRMED** in part, **REVERSED** in part. Each party shall bear its own costs on appeal.[8]

---

[6] To the extent that the Town argues that Mack's IIED claim lacks merit for failure to comply with Arizona's notice of claim statute, A.R.S. § 12-821.01, that claim involves disputed facts about when the snake incident occurred, which the district court may address on remand.

[7] Mack's second theory for IIED lacks merit. He argues that the Town's failure to investigate his complaints properly supports a claim for IIED under *Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1987) (en banc). But unlike the employer in *Ford* that failed to investigate any of the plaintiff's many complaints to management-level personnel for more than one year, 734 P.2d at 582, there is evidence here that the Town investigated Mack's complaints. Indeed, after Mack reported his grievances about Patterson's racial slurs and Davis's snake incident to Councilperson Wessell, she contacted Racette the next day to discuss Mack's complaints. Racette then met with Patterson and issued him a written warning the following day, and she verbally warned Davis that the snake incident was unacceptable. After Patterson used another racial slur a few months later, the Town suspended him for two weeks for continued use of racial slurs. Although the Town may not have investigated Mack's complaints to his satisfaction, the Town's actions certainly do not rise to the level of extreme and outrageous conduct like the employer's actions in *Ford*, where the employer "ignored [the plaintiff's complaints], dragging the matter out for months and leaving [her] without redress." 734 P.2d at 585. Therefore, this theory for IIED fails.

[8] Where we affirm or reverse summary judgment as to one defendant, we also affirm or reverse as to that defendant's named spouse.

*Mack v. Town of Pinetop Lakeside*, No. 17-17105

N.R. SMITH, Circuit Judge, dissenting in part:

"In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). Ignoring this summary judgment standard and then ignoring Ninth Circuit employment discrimination and retaliation cases relating to these issues, my colleagues affirm entry of summary judgment on Mack's (1) 42 U.S.C. § 1981 hostile work environment claim against David Davis; (2) 42 U.S.C. § 1981 retaliation claims against Davis and Kenneth Patterson; and (3) Title VII retaliation claim against the Town of Pinetop. I do not agree.

We review a district court's grant of summary judgment de novo, meaning we owe no deference to the district court's decision. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1033 (9th Cir. 2005). We must view the evidence (including all reasonable inferences) in the light most favorable to the non-moving party and determine whether there are any genuine issues of material fact. *Id.* Construing the facts in Mack's favor, we consider the following record.

Johnny Mack enjoyed his work in the Town of Pinetop's roads department for two decades until the arrival of a new boss (Patterson) and co-worker (Davis) in mid-2015. Mack, then age 58, was the sole African-American employee. The record indicates that Patterson and Davis used the "n-word" and, after Mack complained to their supervisor, Davis tried to frighten Mack by hiding a snake in Mack's vehicle within arm's reach. They succeeded. Mack's heart attack has cut five years off his life.

The record indicates that Patterson used the "n-word" in the workplace (both around Mack and outside his immediate presence) several times. Davis also admits in his deposition that he used the "n-word" at work between one and five times (including in front of Mack), and that he told racial jokes. Others also heard Davis referring to African Americans as having "monkey blood."

Mack reported Patterson's conduct to Patterson's boss, Pinetop Town Manager Evie Racette. Racette told Mack that Patterson "didn't mean it." Patterson and Davis found out Mack had complained to Racette. Pinetop is a close-knit town; friends hire friends. Racette showed Patterson, a close personal friend, particular favoritism. Patterson and Davis were high school buddies, plotting to have Davis take over Mack's position. Information at work always

2

leaked.  As Davis testified, "whenever something happened, everybody knew about it.  Whether it was behind closed doors or not."

Shortly after Mack reported the slurs to Racette, Davis decided to pull a "prank" on Mack.  No one disputes that Davis knew that Mack is extremely afraid of snakes.  Davis captured a snake and told Patterson he would use it to scare Mack.  Other co-workers tried to intervene and convince Davis not to do it, but not Patterson.  He simply turned, walked away, and announced he wanted no part of the prank.  Davis chuckled.

Davis hid the snake in the passenger seat of Mack's street sweeper vehicle, next to some window cleaner.  Davis asked Mack if he could use the window cleaner, so Mack reached in his hand—and grabbed the snake.  While Mack was having a heart attack, he could hear Davis and Patterson laughing from Patterson's nearby office.

1.      The majority has no trouble reversing summary judgment on Mack's 42 U.S.C. § 1981 hostile work environment claim against Patterson for using the "n-word," the "most offensive and inflammatory racial slur in English," *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001).  Yet, it affirms summary judgment as to Davis, because it refuses to consider this evidence against Davis—including Davis's admission he used that same word in Mack's presence.

3

For Mack to survive summary judgment, he needed to show a genuine dispute of material fact as to whether (1) he was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was severe or pervasive, creating a hostile work environment. *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017). Because everyone agrees the "snake incident" was "unwelcome," our inquiry boils down to whether Mack has satisfied his burden on summary judgment as to the first and third elements of his claim against Davis.

Verbal or physical conduct of a racial nature: Without citation, the majority excludes evidence of Davis's slurs and racial attitudes, because "Mack must at least have some knowledge of the hostile conduct for it to alter his workplace and create an abusive work environment." However, we have repeatedly held that comments made outside of the plaintiff's earshot shed light on the racial attitudes of the speaker, the prevalence of racial hostility in the workplace, and the credibility of the plaintiff—all questions of fact. *See, e.g.*, *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008) ("[D]iscriminatory conduct directed at an individual other than the plaintiff may be relevant to a hostile work environment claim."); *McGinest*, 360 F.3d at 1117 ("[I]f racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII,

4

even if such hostility was not directly targeted at the plaintiff."); *Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1198, 1202 (9th Cir. 1991) (though "Woods worked . . . approximately 100 feet from Floyd" and "heard about most of the incidents through other employees," jury could find "Woods was surrounded by racial hostility, and subjected directly to some of it," partly because, "though he worked in a different area, Woods had to deal with Floyd").

Excluding evidence unfavorable to Davis infects the rest of the majority's analysis by eliminating a disputed issue of material fact: whether the "snake incident" was racially motivated. Most importantly, Davis admitted to using (in Mack's presence) a word so evocative of racial violence and subordination and "expressive of racial hatred and bigotry[,]" that our cases recognize its mere utterance creates a triable issue of fact as to whether other abusive conduct was also motivated by racial hostility. *McGinest*, 360 F.3d at 1116 (quoting *Swinton*, 270 F.3d at 817); *see also id.* at 1116 n.9 ("[A] trier of fact might certainly conclude that, in light of [defendant's] use of a racial slur, his other abusive remarks to [plaintiff] were also motivated by racial hostility.").[1] Of course, a

---

[1] Other evidence has probative value vis-a-vis Davis's attitudes on race. For example, even after other co-workers intervened, Davis hid the snake purposely to frighten Mack—the only African American employee. He also suggested African Americans have "monkey blood."

reasonable jury could have concluded that Davis's conduct (i.e., the snake incident) was "because of race" within the meaning of the statute. *See EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 844 (9th Cir. 2005).

Nor can we determine—on summary judgment—that there is no evidence that race played a factor in Davis's "prank." We have never required acts contributing to a hostile work environment be "racist" or "sexist" on their face. *See id.* ("[T]here is no legal requirement that hostile acts be overtly sex–or gender-specific in content, whether marked by language, by sex or gender stereotypes, or by sexual overtures."). To the contrary. "[I]nstances of racial violence or threatened violence which might appear to white observers as mere 'pranks' are, to black observers, evidence of threatening, pervasive attitudes." *McGinest*, 360 F.3d at 1116 (quoting *Harris v. Int'l Paper Co.*, 765 F. Supp. 1509, 1516 (D. Me. 1991) *vacated in part on other grounds*, 765 F. Supp. 1529 (D. Me. 1991)).

The severity or pervasiveness of the harassment: Whether a plaintiff experiences workplace harassment sufficiently severe or pervasive depends on a "totality of the circumstances test." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). Here, the "totality of the circumstances" includes the evidence (taken in the light most favorable to Mack) that Davis used racial slurs, told racial

6

jokes, and pulled a "prank." *See McGinest*, 360 F.3d at 1116 (discussing how racial jokes or actions "may appear innocent or only mildly offensive . . . but in reality be intolerably abusive or threatening when understood from the perspective of a plaintiff who is a member of the targeted group"). Based on this evidence, a reasonable juror could have concluded that Davis contributed to Mack's abusive workplace environment.

2. The majority next errs by affirming the district court's grant of summary judgment on Mack's § 1981 and Title VII retaliation claims. These claims require Mack to show: (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal connection between the two. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (Title VII); *Reynaga*, 847 F.3d at 686 ("[T]he legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." (quoting *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003)). The parties do not dispute that Mack engaged in protected activity when reporting Patterson's racist comments (element 1). Thus, we are left with deciding whether Mack was subjected to an adverse employment action (element 2), and whether Mack has met his summary judgment burden on causation (element 3).

7

Adverse employment action:  The majority concludes that the "snake incident" cannot constitute an adverse employment action as a matter of law, because it "did not affect Mack's employment" nor would it "deter employees from . . . complaining to a supervisor, because a supervisor could remedy the action taken by a co-worker."  However, we have found that creating a hostile work environment is a kind of actionable adverse employment action.  *See Ray*, 217 F.3d at 1244–46.  Even the majority concludes the "snake incident" was outrageous enough to constitute intentional infliction of emotional distress.  If cancelling a public event honoring an employee can constitute an adverse employment action, *see id.* at 1242 (citing *Passer v. Am. Chem. Soc.*, 935 F.2d 322, 330–331 (D.C. Cir. 1991) ), one wonders why *intentionally inflicting emotional distress at work* wouldn't suffice.  After all, circuit law requires us to construe "adverse employment action broadly."  *Id.* at 1240.

Moreover, the notion that no reasonable juror could determine the "snake incident" would deter employees from reporting racial harassment "because a supervisor could remedy the problem" belies the importance of the underlying facts—facts that we are required to take in the light most favorable to Mack.  Since the beginning, Mack has maintained that Davis ambushed him with the snake on account of his race and as retaliation.  The majority seems to believe that, even if

8

Davis executed the "prank" to punish Mack for reporting Patterson's racial slurs, Mack could just complain to Patterson. Never mind that Patterson knew Davis's plan to scare Mack and did nothing, or that Mack heard Patterson laughing with Davis after the ambush.

The majority next emphasizes the lack of evidence indicating that Davis carried out the snake incident with the specific purpose of chilling Mack's further complaints. But retaliatory motive is not a separate or sub-element of an adverse employment action. *Id.* at 1243 n.6 ("The first part of the EEOC's definition of adverse employment action, which requires that the action be 'based on a retaliatory motive,' collapses into the 'causal link' prong of the prima facie test for retaliation.").

Causation: A reasonable juror could conclude that Patterson and Davis knew about Mack's prior complaint to Racette about the use of racial slurs in his workplace. Knowledge is a jury question if there is evidence that makes it reasonable to infer that Patterson/Davis were aware of Mack's protected activity. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1113–14 (9th Cir. 2003) (reversing summary judgment on a retaliation claim, stating that the "[w]hat-did-he-know-and-when-did-he-know-it questions are often difficult to answer, and for that reason are often inappropriate for resolution on summary judgment"). We can

9

infer Patterson was aware of Mack's complaints to Racette, because the evidence suggests that: (1) Racette and Patterson had a close personal and professional relationship; (2) Mack complained to Racette (Patterson's boss) about Patterson's use of racial slurs shortly before the "snake incident"; (3) when Davis told Patterson he was going to place the snake for Mack to find, instead of telling Davis to stop, Patterson "walked away and said, I don't want no part of this"; and (4) immediately after the incident, Mack heard Patterson and Davis laughing in Patterson's office, which had a big window overlooking the scene.

This same evidence suggests that Davis knew about Mack's protected activity: (1) Mack complained to Davis's boss's boss (Racette) about Patterson's use of racial slurs shortly before the snake incident; (2) Davis agreed that "giv[ing] somebody a verbal warning, somehow everybody knew about it and talked," because "it's a small group"; (3) Davis and Patterson were close friends; and (4) Davis told Patterson he thought the complaint was "a bunch of crap."

It bears repeating: we are reviewing a grant of summary judgment. We must not resolve disputed questions of material fact or infringe on the jury's "opportunity to evaluate the credibility of the witnesses." *McGinest*, 360 F.3d at 1112. Our circuit has warned that "when a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory

10

behavior that our society has determined must be extirpated." *Id*. Today's disposition too readily grants summary judgment on Mack's hostile work environment and retaliation claims.

I must dissent.