*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLEY HICKS,

        Plaintiff-Appellant,

v

ADRIZA CAESAR,

        Defendant,

and

BRIAN BROWN,

        Defendant-Appellee.

UNPUBLISHED
August 3, 2023

No. 363161
Oakland Circuit Court
LC No. 2021-191298-CD

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Plaintiff Kimberley Hicks appeals as of right the order of the trial court granting summary disposition in favor of defendant Brian Brown under MCR 2.116(C)(8) (failure to state a claim upon which relief could be granted) and (C)(10) (genuine issue of material fact). We affirm.

## I. BACKGROUND

This case arises from allegations of sexual harassment by Hicks against her coworker, Brown, and alleged discrimination and retaliation against her after she complained about the harassment. Hicks was an employee of the Michigan Department of Health and Human Services (MDHHS) who worked for the Oak Park office of Michigan Rehabilitation Services (MRS). Relevant to this case, Hicks identifies as "an African American female" who also "identifies as overweight." Brown was Hicks's coworker who, Hicks alleged, sexually harassed her. Defendant Adriza Caesar, who is not a party to this appeal and was dismissed because Hicks failed to serve her within the life of the initial summons, was the office manager of the Oak Park office of MRS.

Hicks began working for MDHHS sometime after December 2010. While employed by MDHHS, Hicks worked at offices in Macomb, Genesee, and Oakland Counties. In August 2016, Hicks transferred to the Oak Park office of MRS where she worked as a general office assistant.

-1-

Venita King was Hicks's initial supervisor at MRS. In January 2017, defendant Caesar started as the office manager of the Oak Park office. At that point, although King remained in the office, Caesar became Hicks's supervisor. Hicks affirmed that King and Caesar were both African American women, and that Brown is an African American man. She also described Caesar as "quite tall" and "not petite."

In late May 2017, Hicks and another woman, Edwina Brock, had a verbal dispute that led to the police being called. According to Hicks, Brock called Hicks a "fat kangaroo bitch,"[1] a statement she "repeated in [Caesar's] presence" and in front of a police officer. Caesar issued a "formal counseling"—what appears to be a reprimand by a different name—to Hicks in early June 2017, stemming from the incident with Brock. Hicks could not recall if Caesar issued the formal counseling before she had filed any sort of complaint with the Oak Park office. But she indicated she had filed a formal complaint with the Oak Park police because of past incidents with Brock. Hicks indicated that she complained to Caesar about Brock's comments related to Hicks's weight, but claimed that Caesar "ignored" them.

According to Hicks, Caesar started "severely" harassing Hicks after Hicks filed a weight-discrimination complaint with the Michigan Department of Civil Rights in mid-August 2017 and after she called the police in late May 2017, related to the incident with Brock. Caesar harassed her, Hicks said, by requesting detailed information about Hicks's administrative leave requests, and by taking issue with the clothes Hicks wore to work. Hicks also claimed Caesar harassed her "based on disability," related to an anxiety attack Hicks had at work. Though Hicks did not allege that Caesar made comments about her weight or race, she did assert that Caesar, as a supervisor, "had a duty under the state policy to ensure that those things did not occur."

In mid-July 2018, Hicks filed a discriminatory harassment report with MDHHS against Brown. Hicks alleged that Brown's harassment began in 2017, though she had not filed any complaints against Brown that year.[2] In the harassment report, Hicks detailed allegations of inappropriate conduct by Brown. This included a time that, when with her in a car she was selling, Brown leaned over, looked "inside [her] dress at [her] breast," and "asked [her] about a scar on [her] left breast." It also included several "inappropriate" text messages asking her to go to his house, "soliciting a sexual encounter at work," and requesting to be " 'friends with benefits (sex),' " which Hicks declined. Hicks concluded her report by stating: "The counselors, including [Brown] are empowered in a way that they can adversely affect my employment (quid pro quo)[.]"

In late August 2018, Caesar issued Hicks a written reprimand. As with the formal counseling, the reprimand was issued for unprofessional workplace behavior. It indicated that Hicks was "recently investigated for two additional incidents" in mid-June 2018. The first incident involved another employee, Crystal Jones. According to the reprimand, Jones reported that Hicks

[1] An investigation by MDHHS found "insufficient evidence to support that the claimant was in fact called a 'fat kangaroo bitch'." The investigation confirmed, however, "that [Hicks] was called a bitch," and "appropriate action was taken" to address the issue.

[2] The 2017 incident appears to relate to an early October 2017 text message from Brown, in which he asked about having "some discreet workplace fun with you, with a winking emoji . . . ."

said, "I hope your grandma die." The reprimand noted there was a "history between the two" and "repeated instances of unprofessional conduct." The second incident involved Brown. He reported that Hicks left him behind, without a ride in a state vehicle, for a district staff meeting. Witnesses reported hearing Brown informing Hicks that he would ride with her to the meeting, and that Hicks apparently stated he may not want to ride with her because of "what [she was] listening to." Hicks, however, left without notifying Brown. The reprimand required Hicks to complete training on "Accountability" and "Building a Successful Team" by early October 2018. Hicks refused to sign the reprimand.

In late October 2018, Hicks filed a complaint with the Equal Employment Opportunity Commission (EEOC). Hicks alleged, in relevant part, that she was being denied accommodations and disciplined in retaliation for engaging in a protected activity, i.e., for "making a sexual harassment complaint against a Counselor in the office." In late November 2018, MDHHS filed a position statement related to Hicks's EEOC complaint, denying her allegations and summarizing its position. In a mid-May 2019 letter, Lance Bettison, the EEOC officer who investigated Hicks's sexual-harassment claim, sent a notice of disposition to Brown. The notice stated: "Based on the evidence, the allegation of sexual harassment causing a hostile work environment is not substantiated." Hicks left the Oak Park office of MRS in July 2019.

In late November 2021, Hicks sued Caesar and Brown, alleging three claims under the Elliot-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*: (1) retaliation, (2) disparate treatment, and (3) hostile work environment. In her complaint, Hicks identified Caesar as "a Supervisor employed by [MDHHS]" who, "at all relevant times, was Plaintiff's direct supervisor and had firing and hiring power over subordinate employees such as Plaintiff." Hicks alleged Brown "was, at all relevant times, employed by [MDHHS]." Nowhere in her complaint does Hicks identify Brown as an individual with supervisory or managerial authority over her. She instead only refers to Brown as a coworker. As noted above, Hicks failed to timely serve the summons on Caesar, so the trial court dismissed Caesar from the case.

In mid-May 2022, Brown moved for summary disposition of Hicks's complaint under MCR 2.116(C)(8) and (C)(10). Brown's main focus in his motion was his status as Hicks's coworker. He argued that because he was not her employer, and had no managerial or supervisory authority over her, he could not take an adverse employment action against her or otherwise exert control over the terms and conditions of her employment. As a result, Brown asserted, her disparate-treatment and retaliation claims should be dismissed. He also requested dismissal of Hicks's hostile-work-environment claim, arguing that she failed to allege facts necessary to sustain the claim. Brown further argued that Hicks had failed to present any evidence that he controlled a term or condition of her employment, that his employer knew of any offensive conduct on his part, or that he substantially interfered with her employment through inappropriate conduct such that it created a hostile work environment.

In early August 2022, Hicks responded to Brown's dispositive motion, arguing that questions of fact existed regarding whether she was retaliated against and suffered disparate treatment. Hicks asserted that Caesar only issued the August 2018 reprimand after Hicks filed her complaint against Brown in mid-July 2018, and that additional written reprimands and harassment occurred after she filed her complaint with the EEOC. Hicks argued this harassment was "done in retaliation for [her] engaging in protected activity." She asserted that the evidence showed she

suffered an adverse employment action, as demonstrated by the sexual harassment, reprimands and write-ups, being assigned job duties outside her responsibilities, and eventually leaving her job because of the "constant harassment." Hicks further argued that she was treated differently from Brown, noting that she was issued a written reprimand after he filed a complaint against her, but when she complained about his sexual harassment, she received a "corrective action" and still had to work with Brown. Finally, Hicks argued there was a factual dispute regarding whether Brown's conduct created a hostile work environment. She noted his repeated sexual harassment and lies he told about her that led to reprimands against her and her eventual departure from MRS.

In early September 2022, without a hearing, the trial court entered an order granting summary disposition in Brown's favor. In its opinion accompanying the order, the court addressed Hicks's three claims. First, the trial court concluded that summary disposition of her retaliation claim was warranted because Hicks "failed to allege that Brown had any authority over [her]" or that he took any adverse actions against her. The court also found that Hicks had failed to cite any authority or evidence establishing that "Brown was an employer under the act . . . ." Second, the trial court found that summary disposition of Hicks's disparate-treatment claim was appropriate. As with the retaliation claim, the trial court found that Hicks failed to allege, and failed to present any caselaw or evidence, that "Brown had any authority over [her] or that [he] discriminated against [her] because of her sex or weight as [she] contends." Finally, the trial court granted summary disposition of Hicks's hostile work environment claim with similar reasoning. It found that Hicks had failed to allege, and failed to present any authority or evidence, that "Brown affected or controlled a term, condition, or privilege of [Hicks's] employment." This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. at 159 (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil*, 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

### A. RETALIATION AND DISPARATE TREATMENT

-4-

Hicks argues that the trial court erred by granting summary disposition of her retaliation and disparate-treatment claims because factual disputes remain regarding those claims. We disagree.

The ELCRA prohibits employers from engaging in discriminatory practices. MCL 37.2102. An "employer" is "a person who has 1 or more employees, and includes an agent of that person."[3] An employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). The ELCRA defines sex-based harassment as follows:

> (k) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(k)(*iii*).]

Sex-based discrimination claims, like those based on sexual harassment, may be proven by "direct evidence or by indirect or circumstantial evidence." *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016) (quotation marks and citation omitted). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. When direct evidence is lacking, however, a plaintiff must establish that the defendant employer was "predisposed to discriminate against the plaintiff and actually acted on that disposition," and must provide "direct proof that the discriminatory animus was causally related to the decisionmaker's action." *Graham v Ford*, 237 Mich App 670, 676-677; 604 NW2d 713 (1999).

If the plaintiff fails to offer direct evidence of discrimination, she may instead proceed under the *McDonnell Douglas*[4] burden-shifting framework. *White v Dep't of Transp*, 334 Mich

---

[3] In *Chambers v Trettco, Inc*, 463 Mich 297, 312; 614 NW2d 910 (2000), our Supreme Court noted that "whether analyzing quid pro quo harassment or hostile environment harassment, the question is always whether it can be fairly said that the employer committed the violation—either directly or through an agent." Whether Brown constituted an agent of MDHHS or the MRS, the issue remains one of authority. Hicks, under *Chambers*, would have to have shown that Brown was able to harass her with the authority of his employer. See *id*. at 310-313. She has not done so here.

[4] *McDonnell Douglas Corp v Green*, 411 US 972; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

App 98, 107; 964 NW2d 88 (2020). Under that framework, the plaintiff first must establish a prima facie case of employment discrimination. *Id*. at 108. This requires the plaintiff to establish that: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly situated employees not part of the protected group. *Hazle v Ford Motor Co*, 464 Mich 456, 463; 628 NW2d 515 (2001). If the plaintiff establishes a prima facie case, a presumption arises that the defendant's actions were discriminatory. *White*, 334 Mich App at 108. The defendant employer may then rebut that presumption by presenting "a legitimate, nondiscriminatory reason" for the employment action. *Id*. If the defendant satisfies this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason was simply a pretext for discrimination. *Id*.

"A prima facie case of discrimination under the Civil Rights Act can be made by proving either disparate treatment or disparate impact." *Duranceau v Alpena Power Co*, 250 Mich App 179, 182-182; 646 NW2d 872 (2002). Here, Hicks alleges only a claim of disparate treatment. A disparate treatment claim is one that alleges intentional discrimination on the basis of belonging to a protected class. *White*, 334 Mich App at 107-108. "Disparate treatment requires a showing of either intentional discrimination against protected employees or against an individual plaintiff." *Duranceau*, 250 Mich App at 182.

Regarding a retaliation claim, the ELCRA provides in relevant part:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

To establish a retaliation claim under the ELCRA, a plaintiff must establish "(1) that [s]he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

The trial court did not err in granting summary disposition of Hicks's disparate-treatment and retaliation claims against Brown. In her complaint, Hicks alleged that Caesar was Hicks's "direct supervisor" and "had firing and hiring power over subordinate employees such as [Hicks]." Regarding Brown, however, Hicks alleged only that he was "employed by [MDHHS]" and identified him as a "coworker" only. Hicks also has not pointed to any evidence that Brown held a supervisory or managerial position in which he could affect her employment or take an employment action adverse to her.[5]

---

[5] We acknowledge that, when describing Brown's request for the two to be "friends with benefits," Hicks stated that she declined the request and "told him yet again" that they worked together and

Despite the seriousness of the allegations of sexual harassment against Brown,[6] Hicks's claims against Brown are deficient because he does not constitute an "employer" for purposes of her retaliation and disparate-treatment claim. There is no allegation or evidence that he had the ability to take an adverse employment action against her; according to her complaint, Brown was simply her coworker. Claims of disparate treatment and retaliation, however, prohibit an *employer* from taking some sort of discriminatory action against an employee. Because Brown was just an employee, and not an employer, for purposes of the ELCRA, the trial court did not err in summarily dismissing Hicks's claims against him.[7]

## B. HOSTILE WORK ENVIRONMENT

Hicks argues there remained questions of fact regarding whether she was subjected to a hostile work environment, and the trial court therefore improperly granted summary disposition of that claim. We disagree.

In *Quinto v Cross & Peters Co*, 451 Mich 358, 368-369; 547 NW2d 314 (1996), our Supreme Court set forth the elements of a hostile-work-environment claim, which require a plaintiff to show:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of [her protected status]; (3) the employee was subjected to unwelcome . . . conduct or communication [involving her protected status]; (4) the unwelcome . . . conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

The existence of a hostile work environment is evaluated under an objective standard. *Radtke v Everett*, 442 Mich 368, 394; 501 NW2d 155 (1993). The question is "whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an

---

he was "in a position of authority as a counselor because with the performance plan any counselor could ask me to do anything so I was beholden to him." Hicks, however, does not appear to have raised this position or evidence below, and does not do so on appeal.

[6] The EEOC found that allegations of sexual harassment causing a hostile work environment were unsubstantiated.

[7] The disposition of these claims may have turned out differently had Caesar been properly served the summons at the start of the case, or if Hicks had sued MDHHS or MRS. "[A] supervisor's decision not to take action to stop harassment by co-workers in retaliation for an employee's opposition to a violation of the Civil Rights Act can constitute an adverse employment action." *Meyer v Center Line*, 242 Mich App 560, 571; 619 NW2d 182 (2000). And "[w]here the harassment is sufficiently severe, a supervisor's failure to take action to respond can constitute a materially adverse change in the conditions of employment." *Id*.

intimidating, hostile, or offensive employment environment." *Id*. Relevant factors "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinto*, 451 Mich at 370 n 9.

Hicks can arguably establish the first four of these elements, but not the last. Hicks belongs to a protected group on the basis of her gender. *Radtke*, 442 Mich at 383 (concluding that "all employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex."). She was also subjected to the unwelcome harassment on the basis of sex, as Brown allegedly sexually propositioned her and sought to be friends with benefits. He also allegedly looked at her breast and asked about a scar on it. Though there appears to be limited evidence about the effect Brown's alleged harassment had on Hicks, it led her to file her July 2018 harassment report and a complaint with the EEOC. Hicks's problem, however, is that the only remaining defendant, Brown, was her coworker, not her employer. See *Radtke*, 442 Mich at 396-397 (finding element of respondeat superior was met where the alleged perpetrator was her employer). Had she timely served the summons on Caesar, and Caesar remained a defendant, or had she sued MDHHS or MRS, perhaps she could establish the final element of respondeat superior. But because she did not, and Brown was just her coworker, Hicks is unable to establish the final element of her hostile-work-environment claim.

We affirm.[8]

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood

---

[8] To the extent that Hicks's claims related to weight discrimination, her brief on appeal does not provide argument on that issue, and she has therefore abandoned that argument. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority.").